UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____X

FELIPE FERNANDO FLORES

    *Petitioner,*                                      **EMERGENCY PETITION**
                                                  **A No. 094-933-087**

v.

KEN GENALO, NY Director,  Field Office,
      Enforcement and Removal Operations.
      U.S. Immigration and Customs Enforcement;

TODD LYONS, Director, U.S. Immigration
      and Customs Enforcement;

KRISTI NOEM, Secretary of the U.S. Department of
      Homeland Security; and

PAMELA BONDI, Attorney General of the
      United States,

    *Respondents*

_____X

### PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241) AND EMERGENCY ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER

1.  **FELIPE FERNANDO FLORES** ("Petitioner"), by counsel, respectfully petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and moves by Emergency Order to Show Cause and Temporary Restraining Order. This application is filed on an emergency basis to prevent Petitioner's unlawful transfer or removal and to preserve this Court's jurisdiction.

2.  This Petition challenges the legality of Petitioner's arrest and continued detention under the Fourth Amendment, 8 U.S.C. §§ 1225, 1226, and or 1231, and 1357, the Due Process Clause, and binding agency regulations. The central question presented is straightforward: under what lawful statutory authority is Petitioner currently detained, and was that authority validly invoked?

3.  The Supreme Court has emphasized that freedom from physical restraint lies at the core of the liberty protected by the Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Where detention is challenged, the government must identify and justify the legal authority for incarceration.

1

4. Section 2243 provides that once a habeas petition is presented, *the Court shall "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted," and that the custodian "shall make a return certifying the true cause of the detention."* The statute further contemplates expedition, providing that the return shall be made within 3 days unless additional time is allowed for good cause.

5. 28 U.S.C. § 2241(c)(3) provides that a court shall grant the writ of habeas corpus if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." The Fifth Amendment requires that "[n]o person shall be . . . be deprived of life, liberty, or property, without due process of law." U.S. Cont. amend. V. These due process rights apply to all persons in the United States, whether citizens or not. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

6. "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); see also *Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.,* 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

7. "The typical remedy" for unlawful executive detention," "is, of course, release," if the government's ongoing detention of Petitioner, in the face of yet another complete failure of process, entitles him to immediate release *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "[T]he traditional function of the writ is to secure release from illegal custody"; it is the "usual remedy by which a man is restored again to his liberty, if he have been against law deprived of it." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (internal citation omitted). Habeas corpus "is perhaps the most important writ . . . affording as it does a

2

swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (internal citation omitted). And "if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." *Id*. at 402.

8. If a detention results from an agency violating its own regulations, the Government may not have provided the detainee with the process to which he is due under the Constitution, and the writ can issue. *See Funes v. Francis*, --- F. Supp. 3d ---, No. 25-CV-7429, 2025 WL 3263896, at \*24–25 (S.D.N.Y. Nov. 24, 2025); *E.M.M. v. Almodovar*, No. 25-CV-08212, 2025 WL 3077995, at \*6 (S.D.N.Y. Nov. 4, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 414–15 (S.D.N.Y. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 499 (S.D.N.Y. 2025); *Chipantiza-Sisalema v. Francis*, No. 25-CV-05528, 2025 WL 1927931, at \*3–4 (S.D.N.Y. July 13, 2025); *Roman-Cruz v. Lyons*, No. 25-CV-10522, 2026 WL 114936, at \*2–3 (S.D.N.Y. Jan. 15, 2026). "The common-law history of the writ underscores that the traditional remedy in habeas is release from illegal custody." *Funes*, 2025 WL 3263896, at \*24 (citing *Preiser v Rodriguez*, 411 U.S. 475, 484 (1973)); *accord Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention." (emphasis in original)); *Munaf v. Geren*, 553 U.S. 674, 693–94 (2008).

## THE ILLEGAL ARREST

9. **FELIPE FERNANDO FLORES is a 40-year-old man born in El Salvador who has lived most of the last fifteen years in the US since his arrival in 2007.**

10. **He is married and has four children, one of whom is four years old and is a United States citizen.**

11. **He works for a local Long Island tree removal company.**

12. **He has never been arrested by the police.**

13. **Until his recent arrest by ICE in New York, he lived at 119 Colonial Avenue, Freeport, NY 11520 in Long Island.**

14. **On March 4th, 2026, he was on his way to work to cut trees and was a passenger in a vehicle with four other workers.**

15. **The vehicle was stopped by ICE agents, and four of his passengers were detained and investigated**

by ICE.

16. **They were stopped and detained without a warrant and without probable cause or reasonable suspicion to effectuate a stop of the vehicle.**

17. **All of the occupants of the vehicle were Hispanic, and they were racially profiled.**

18. **Before they were accosted by the ICE agents, the driver had not committed any traffic or any other kind of infraction or crime and had not given the ICE agents any probable cause to stop him, or to accost or detain them, and did not give them any articulable suspicion to detain them and ask them questions.**

19. **The ICE agents did not know anything about the occupants before detaining them.**

20. **The masked ICE agents surrounded them and ordered them to step out of the car.**

21. **At no time did they ever charge anyone with a crime or a traffic violation.**

22. **They did not state why they initially approached them.**

23. **After they arrested and handcuffed Petitioner, ICE agents illegally interrogated him about his pedigree, national origin, and immigration status.**

24. **This obviously happened without an administrative, arrest, or search warrant.**

25. **The ICE agents had no valid charging instrument, no warrant of arrest, no administrative file, a summons ordering him to appear before the immigration court, and no Form I-862 Notice to Appear <u>before</u> approaching him or the passengers, <u>nor at the time</u> of his arrest.**

26. The ICE agents did not present a warrant, nor did they have probable cause to arrest him. They "did not know him from Adam."

27. At no time, neither before, during or after his arrest, did ICE ever conduct a meaningful individualized custodial determination or custody review before or contemporaneously with his arrest, as required by law.

28. Petitioner was given no prior notice that he would be arrested, nor an opportunity to be heard on ICE's decision to detain him, and he was not afforded due process.

29. During or after his arrest, he was not permitted to make any phone calls, and he did not even know

4

where he was being taken.

30. DHS is now incarcerating him indefinitely without an individualized custody determination as required by the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the governing detention statutes and regulations.

31. As proven below, ICE unlawfully arrested him on the street without 1) a "reason to believe that he was removable" and that 2) he was "likely to escape before a warrant can be obtained," which are the minimum requisites under INA Section 287 (a)( 2), 8 USC 1357 (a)(2) for a warrantless arrest by ICE.

32. When ICE agents later fingerprinted him and booked him at DHS processing offices, they did not follow statutorily and constitutionally guaranteed procedures for due process.

33. That is why Petitioner now comes to this Honorable Court seeking justice.

<u>**THE RELEVANT IMMIGRATION HISTORY**</u>

34. He entered the U.S. in 2010, fleeing El Salvador because inter alia, MS 13 gangs were extorting the people in the area where he lived to pay half of its protection tax.

35. If he did not pay half of the tax, they would assault him, threaten him and his family, and terrorize him and his family.

36. Today, he has a four-year-old U.S. citizen daughter with a learning disability that may qualify him for cancellation of removal, which can result in a legal permanent residence for him, an application that he will be trying to pursue.

37. This immigration application takes years to resolve, and it would be punitive to keep him in jail while it is pending. That application can only be submitted if he is placed into removal proceedings.

<u>**Emergency Habeas Petition, Request for Immediate Order to Show Cause Under 28 U.S.C. § 2243, and Application for Temporary Restraining Order to Preserve Jurisdiction and Meaningful Review**</u>

38. Petitioner respectfully submits this emergency petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the legality of his arrest and continued detention by Respondents.

39. Because Petitioner is presently in federal immigration custody and subject to transfer at any time, immediate judicial intervention is necessary to preserve this Court's jurisdiction and ensure meaningful

review of the legality of detention.

40. Pursuant to 28 U.S.C. § 2243, Petitioner respectfully requests that the Court issue an Order to Show Cause directing Respondents to demonstrate why the writ should not be granted and to certify the true cause of Petitioner's detention. Section 2243 requires prompt judicial inquiry into executive restraint and the custodian to file a return setting forth the statutory and factual basis for confinement.

41. Wherefore, Petitioner respectfully requests that this Court Order the Respondents to Show Cause pursuant to 28 U.S.C. § 2243 why a Temporary Restraining Order should not remain in effect pending swift adjudication of the habeas petition:

   a)  Prohibiting Respondents from transferring Petitioner outside this District absent further order of this Court
   b)  directing Respondents to provide reasonable and timely access to counsel, including meaningful and confidential in-person legal visitation;
   c)  directing Respondents to file, within forty-eight (48) hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243;
   d)  requiring production, within forty-eight (48) hours of this Order, of all custodial and administrative documents supporting detention, as well as all DHS and ICE custody, detention, and administrative records, with appropriate relief for noncompliance;
   e)  producing Petitioner forthwith before this Court as necessary to effectuate meaningful habeas review; and upon adjudication of the Petition, granting  the writ of habeas corpus and ordering Petitioner's immediate release from unlawful detention;
   f)  awarding reasonable attorney's fees and costs pursuant to the Equal Access to JusticeAct, 28 U.S.C. § 2412(d), should Petitioner prevail in this action;
   g)  ordering that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where Respondents will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a), that Petitioner be "entitled to release from the unlawful restrictions on his liberty which means, in the circumstances here, restoration of... the status quo ante." *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention]... including the ankle monitor and reporting requirements") and "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections." *Id. See Ccorihuaman v. Genalo* No. 26-cv-554 (E.D.N.Y. Feb 6, 2026) and
   h)  ordering that Respondents shall return to Petitioner all personal property belonging to Petitioner that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by Respondents or by any contracted or affiliated facility, and that such property shall be returned in the same condition as it existed immediately prior to Petitioner's detention; and
   i)  Granting such other and further relief as this Court deems just and proper.

## **PREFACE**

**Petitioner's Arrest and Detention Without Notice of the Asserted Statutory Basis for Custody,**

**Without a Contemporaneous Individualized Custody Determination, and Without the Administrative Record Violates the Fourth Amendment, the Fifth Amendment, the Immigration and Nationality Act, and Governing Regulations**

Alternative Theories of Custody, Lack of Process, Failure to Produce the Administrative Record, and Reservation of Rights

42. At the time of arrest, Petitioner was not specifically advised under which statutory provision DHS claimed authority to arrest and detain him. He was not told whether DHS was proceeding under 8 U.S.C. § 1225, § 1226, or § 1231, and was not provided with any official custody or detention documents, or any part of the administrative file, or contemporaneous custodial documentation sufficient to determine which detention framework DHS intends to invoke. Under those circumstances—particularly where this Petition is being filed on an emergency basis to preserve jurisdiction before transfer and before DHS has produced the record—Petitioner is compelled to plead in the alternative. That is not speculation for its own sake; it is a necessary response to DHS's failure to identify the statutory basis for custody at the time liberty was first restrained.

43. Petitioner has not had an adequate right to counsel since his arrest, nor the opportunity to interview with an attorney, and the facts alleged about his case are based on interviews with family members and, as such, are made upon information and belief.

44. This alternative pleading is also warranted because recent immigration habeas litigation in New York and New Jersey has revealed a recurring pattern of shifting detention theories, including efforts by DHS to characterize detention under 8 U.S.C. § 1225 in cases where individuals were arrested in the interior after extended residence in the United States and where, under prior practice, detention would have proceeded under § 1226. Courts addressing these cases have repeatedly noted the inconsistency, imprecision, and after-the-fact nature of DHS's statutory theories. See, e.g., *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC) (E.D.N.Y. Nov. 10, 2025) (describing DHS's detention theories as "imprecise and shifting" and explaining that the inconsistencies "call into question the basis for [the] detention") ; *Rivera Zumba v. Bondi*, No. 25-14626 (KSH), 2025 WL 2753496 (D.N.J. Sept. 26, 2025) (describing the agency's new practice of classifying persons long present in the United States, "for the first time," as arriving aliens seeking admission) . In light of that pattern, and because DHS has not

disclosed the records needed to identify the precise detention theory here, Petitioner must preserve all applicable statutory and constitutional challenges from the outset.

45. **Whether DHS ultimately claims detention under § 1225, § 1226, or § 1231, the same fundamental principles govern. DHS may not deprive a person of liberty without identifying a lawful statutory basis for custody, without complying with the procedures that govern that custody framework, and without affording constitutionally adequate process, including notice and a meaningful opportunity to be heard. Because DHS did not identify the asserted statutory basis for arrest at the time of detention, and because the record necessary to test that assertion has not been produced, Petitioner pleads in the alternative below and reserves the right to amend as soon as DHS discloses the administrative file and custodial documents.**

46. Petitioner files this action at the inception of custody, before Respondents have produced the administrative file or any reliable record identifying the legal basis for arrest or detention. As of filing, neither Petitioner nor counsel has been provided any contemporaneous custodial documentation, including any executed administrative warrant, charging document, reinstatement notice, revocation notice, custody determination, or record establishing whether Respondents purport to proceed under 8 U.S.C. § 1225, § 1226, or § 1231. Petitioner therefore pleads in the alternative, on information and belief, that whichever detention provision Respondents may later invoke, the arrest and continued detention are unlawful because they were imposed without a lawful statutory basis, without the procedures required by regulation, and without constitutionally adequate notice and opportunity to be heard.

47. The governing constitutional principles are settled. The Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law, and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). That protection extends to noncitizens. *Id.* at 693. And when executive detention is imposed outside the ordinary criminal process, habeas review must be searching and real. See *Hamdi v. Rumsfeld*, 542 U.S. 507, 529

8

(2004); *Boumediene v. Bush*, 553 U.S. 723, 783 (2008). The Second Circuit has likewise held that immigration detention implicates the most significant liberty interest and that challenges to the constitutionality of detention procedures are properly brought in habeas. See *Velasco Lopez v. Decker*, 978 F.3d 842, 850–54 (2d Cir. 2020); *Hechavarria v. Sessions*, 891 F.3d 49, 53–55 (2d Cir. 2018). As Judge Broderick recently summarized in granting habeas relief in a supervision-revocation case, "[i]f a detention is the result of an agency violating their own regulations, then the Government may not have provided the detainee with the process that they are due under the constitution and the writ can issue." *Ndoye v. Joyce*, No. 25-CV-8856 (VSB), slip op. at 5 (S.D.N.Y. Feb. 6, 2026) .

48. We believe the DHS may later contend that Petitioner is detained under 8 U.S.C. § 1231 because of a prior removal order, order of supervision, or purported reinstatement; that theory does not excuse the complete absence of contemporaneous process. Section 1231, however, is not "a free-roaming right to arrest and detain people any time [the Government] sees fit." *Diallo v. Joyce*, No. 25-CV-9909 (AS), slip op. at 3 (S.D.N.Y. Dec. 23, 2025) . As *Diallo* explained, § 1231(a)(6) authorizes only a period of continued detention "beyond the removal period"; it does not authorize the Government to seize a person anew, years later, without showing how the statutory and regulatory predicates for such custody have been met. *Id.* at 2–5 . Judge Subramanian therefore rejected the Government's claim of broad post-order detention power and held that the Government "can't detain anyone it wants. It needs a statutory basis to arrest and detain people." *Id.* at 2–3 . That reasoning applies here. **If Respondents invoke § 1231, they must still establish, with actual records, that a valid final order exists, that the claimed post-order detention framework truly applies, and that the procedures governing revocation of release, re-detention, or reinstatement were followed. Absent that showing, § 1231 cannot be assumed.**

49. Nor may Respondents cure a lack of statutory authority by producing, after the fact, a theory of reinstatement under 8 U.S.C. § 1231(a)(5). Reinstatement is governed by 8 C.F.R. § 241.8, which requires immigration officers to determine, at minimum, the existence of a prior removal order, the identity of the person arrested, and illegal reentry after removal. See 8 C.F.R. § 241.8(a); *Garcia-Villeda*

9

*v. Mukasey*, 531 F.3d 141, 149–50 (2d Cir. 2008). At the emergency-habeas stage, where the Government has produced no administrative file, no operative prior order, and no reinstatement packet, the Court cannot assume those determinations were made. Indeed, the limited records in similar cases show why the assumption would be unwarranted.

50. Petitioner therefore pleads in the alternative that if Respondents later invoke reinstatement, any such reinstatement had to be lawfully accomplished before or at the time of arrest and cannot retroactively validate detention.

51. The New York cases confirm that where supervision or post-order custody is invoked, notice and an opportunity to respond are not optional. In *Funes Gamez v. Francis*, No. 25 Civ. 7429 (PAE), 2025 WL 3263896 (S.D.N.Y. Nov. 24, 2025), Judge Engelmeyer held that ICE violated its regulations and due process where a noncitizen reporting for a scheduled check-in was "summarily informed that she would be taken into custody, without the notice or prompt informal interview that ICE's regulations require." The court found that "the manner in which Funes was taken into custody on September 8, 2025 violated ICE's regulations and due process, and orders her immediate release." Likewise, in *Zhu v. Genalo*, No. 1:25-cv-06523 (JLR), 798 F. Supp. 3d 400 (S.D.N.Y. 2025), the Government acknowledged that the petitioner did not receive notice of revocation or an interview, and Judge Rochon rejected the Government's effort to detain first and explain later. The court emphasized that petitioner was not claiming a right to perpetual supervision, but "a right not to be redetained without appropriate process," and held that the governing regulations required that "[a] copy of any decision . . . to detain an alien shall be provided to the detained alien," with reasons stated, because failure to provide such notice "thwarts his ability to contest the revocation."

52. Judge Rochon further held that even apart from the regulations, minimal due process required notice and an informal interview, because the "almost nonexistent procedural protections" markedly increased the risk of erroneous deprivation of liberty.

53. *Diallo* drives the same point home in the § 1231 setting. There, the Government conceded that it could not say Diallo had received "the notice and prompt interview required by 8 C.F.R. § 241.4(l)," and the

10

court rejected the Government's attempt to read § 1231 broadly while stripping away the procedural protections that would ordinarily govern re-detention. Judge Subramanian explained that it "defies common sense" to interpret § 1231 to allow redetention of a person never previously detained under supervision while depriving her of "the procedural safeguards that someone like Diallo would have if the government had only followed its own legal mandates." He then relied on *Zhu*'s Mathews analysis, including the recognition that the private liberty interest is weighty, the risk of error is high when protections are "almost nonexistent," and the Government's interests are not undermined by minimal safeguards such as notice and an interview. *Id.* That reasoning applies here whether Respondents later call the custody § 1231 detention, supervision revocation, or reinstatement-based confinement.

54. To the extent Respondents instead invoke 8 U.S.C. § 1225, the same problem remains. Mandatory detention may not be conjured into existence after the fact through shifting theories or contradictory paperwork. In *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC) (E.D.N.Y. Nov. 10, 2025), Judge Choudhury closely examined the Government's effort to characterize detention under § 1225 after the petitioner had been arrested immediately following a credible-fear interview. The court found that the Government's theories were "imprecise and shifting," that its positions were inconsistent, and that those inconsistencies "call into question the basis for [the] detention." The court further noted that although the Government attempted to rely on expedited-removal paperwork, the Form I-860's order section was blank: "Because the 'Order' portion of the form is blank there is no dispute Rodriguez-Acurio was not ordered removed, and this document is accurately described as a 'Notice of Expedited Removal.'" That language is directly relevant to any case in which DHS vaguely suggests a prior expedited-removal history but has not produced an actual operative order. A notice is not the same thing as a valid order, and detention under the post-order framework cannot simply be assumed.

55. *Rodriguez-Acurio* is equally important on the warrant point. There, after the petitioner was seized, she was served with a Form I-200 whose face stated she was arrested under "sections 236 and 287," i.e., the § 1226 framework; yet the Government simultaneously claimed in declaration form that she had been taken into custody pursuant to § 1225(b)(1). Judge Choudhury highlighted that the declaration was

11

"[d]irectly contradicting the face of the warrant attached to his declaration," and the court treated those contradictions as central to why the detention could not stand. The court also held that "[n]o one at DHS or ICE ever made any individualized determination that Rodriguez-Acurio poses a flight or public safety risk before she was suddenly arrested and detained," and that detention without "any notice or opportunity to be heard" violated due process. Thus, if Respondents later produce a warrant that post-dates the seizure, or a warrant that on its face corresponds to a different statutory framework than the one argued in court, those contradictions do not cure the original defect; they expose it.

56. The same due process defect exists if Respondents later argue that a warrant existed somewhere in the system even though no warrant was presented or disclosed at the time of arrest. The petition should therefore expressly plead, in the alternative, that Petitioner was arrested without any judicial warrant and, on information and belief, without any executed administrative warrant being presented to Petitioner or counsel at the time liberty was first restrained. If a Form I-200, I-205, or other document was generated only during subsequent processing, that later paperwork cannot retroactively create authority that was absent at the moment of seizure. The New York cases repeatedly reject precisely that logic. See *Zhu*, 798 F. Supp. 3d 400; *Funes*, 2025 WL 3263896; *Diallo*, No. 25-CV-9909; *Ndoye*, No. 25-CV-8856. In short, Respondents may not arrest first, separate the detainee from counsel and family, withhold the file, and then search for a legal basis later.

57. Nor may Respondents avoid the procedural problem by claiming that some undocumented internal review occurred. In *Ndoye*, Judge Broderick construed 8 C.F.R. § 241.4(l) as a unified revocation framework and rejected the Government's repeated attempt to parse the rule in a way that afforded less process than the regulation required. The court explained that when liberty is restrained through revocation of supervision, the regulation entrusts revocation decisions to specified officials and requires the procedures laid out in the regulation as a whole. That matters here because, at the outset of an emergency habeas case, the Government often has not shown who made the decision, whether the person was authorized, what documents were reviewed, or whether the procedural steps required by the regulation were actually followed. The absence of that showing is not a trivial gap. It is one of the

12

reasons the writ issues.

58. The same principle is reflected in *Polat v. Soto*, Civil Action No. 2:25-cv-16893, 2025 U.S. Dist. LEXIS 260802 (D.N.J. Dec. 17, 2025), where Judge Semper held that detention authority turns on the petitioner's posture "at the time ICE arrested him," not on a historical event or order later repurposed by the Government, and that DHS "cannot now retroactively resurrect that order to justify detention" absent proof it actually took legal effect. *Polat* is especially important here because it defeats the common litigation tactic of invoking a prior order, encounter, or paperwork only after habeas is filed, without showing that the operative legal predicates for present detention were established before or at the time of arrest.

**SHOULD ICE CLAIM THAT THEY ARE DETAINING HIM UNDER SECTION 1231, OR EXPEDITED REMOVAL UNDER 1225, THEN THE FOLLOWING ARGUMENTS APPLY IN THE PETITIONER'S APPLICATION FOR RELEASE**

59. **Petitioner therefore pleads in the alternative that, if Respondents later claim detention under § 1231 based on a prior removal order, order of supervision, warrant of removal, or reinstatement, the same custody principles apply. At a minimum, Respondents were required to possess and rely upon the operative administrative record, to identify the correct statutory basis for detention, to comply with the governing regulations, and to afford Petitioner constitutionally adequate notice and an opportunity to be heard. Based on the information currently available, those steps were not taken. No valid warrant or reinstatement paperwork has been shown to counsel; no administrative file has been produced; no contemporaneous custody determination has been disclosed; and no meaningful process has been afforded.**

60. **Petitioner further pleads in the alternative that, if Respondents later contend that Petitioner was on some form of supervision or conditional release, any revocation of that status was unlawful because Petitioner was not given the basic process that the regulations and the Due Process Clause require. As *Funes*, *Zhu*, *Diallo*, and *Ndoye* demonstrate, at minimum that process includes contemporaneous notice of the reasons for redetention and a meaningful opportunity to respond. See *Funes*, No. 25 Civ. 7429, 2025 WL 3263896; *Zhu*, 798 F. Supp. 3d 400; *Diallo*, No. 25-CV-9909;**

13

*Ndoye*, No. 25-CV-8856. The Government may enjoy discretion in the immigration context, but it may not dispense with the procedures that cabin that discretion when liberty is at stake.

61. Petitioner also pleads, in the alternative, that if Respondents later assert a prior expedited-removal order as the basis for detention or reinstatement, Respondents must prove the existence of an actual, operative order, not merely an inadmissibility notice or other incomplete form. *Rodriguez-Acurio* demonstrates that where the form's order section is blank, the document is not an order at all. And where the Government cannot demonstrate that the operative order existed and took legal effect, it cannot rely on post-order detention authority. See *Polat*, 2025 U.S. Dist. LEXIS 260802; *Rodriguez-Acurio*, No. 2:25-cv-6065.

62. Petitioner further alleges that, to the extent any statements were obtained from him during the arrest or immediately preceding it, those statements were taken during an unlawful seizure imposed without warrant, without notice of the legal basis for custody, and without disclosure of the records or orders purportedly authorizing that seizure. If Respondents later rely on such statements to establish any element of reinstatement, removability, or detention authority, Petitioner reserves all rights to challenge the admissibility and legal sufficiency of those statements and to seek suppression where appropriate.

63. Finally, if the Respondents' fail to produce the administrative record that itself is highly significant in habeas. The habeas statute requires the respondent to make a return certifying the true cause of detention, and without the underlying administrative file the Court cannot determine whether the statutory requirements for detention were satisfied. Here, too, the absence of the file prevents meaningful testing of whether there was any valid prior order, whether any reinstatement occurred in compliance with 8 C.F.R. § 241.8, whether any warrant was actually operative at the time of arrest, and whether the detention was placed under the correct statutory framework.

64. In sum, whether Respondents ultimately invoke § 1225, § 1226, or § 1231, the same principle governs: the Government may not deprive a person of liberty without identifying and proving a lawful statutory

14

basis for custody, without complying with its own regulations, and without constitutionally adequate process. It may not seize first and justify later. It may not rely on an order not produced, a reinstatement not shown, a warrant not presented, or an administrative file not reviewed. And it may not repair those defects through shifting theories after habeas jurisdiction has attached. Under the Supreme Court's due process cases, the Second Circuit's habeas and detention precedents, and the recent decisions of the Southern and Eastern Districts of New York and the District of New Jersey, Petitioner's detention is unlawful unless and until Respondents can prove otherwise with competent, contemporaneous records and procedures they have not yet produced. See *Zadvydas*, 533 U.S. at 690; *Hamdi*, 542 U.S. at 529; *Boumediene*, 553 U.S. at 783; *Velasco Lopez*, 978 F.3d at 850–54; *Hechavarria*, 891 F.3d at 53–55; *Funes*, 2025 WL 3263896; *Zhu*, 798 F. Supp. 3d 400; *Diallo*, No. 25-CV-9909; *Ndoye*, No. 25-CV-8856; *Rodriguez-Acurio*, No. 2:25-cv-6065; *Polat*, Civil Action No. 2:25-cv-16893, 2025 U.S. Dist. LEXIS 260802.

65. Accordingly, Petitioner respectfully alleges that his arrest and detention are unlawful under the Fourth Amendment, the Fifth Amendment, the INA, and the governing regulations; that he is entitled to immediate habeas relief unless Respondents promptly produce the complete administrative record and establish a lawful basis for custody; and that, at minimum, he is entitled to whatever contemporaneous notice, individualized custodial determination, and opportunity to be heard the Constitution and the governing statutory framework require.

66. Because this Petition is being filed on an emergency basis and before Respondents have produced the administrative file, Petitioner cannot yet know the full immigration history, the precise custodial theory Respondents will eventually assert, or the documents on which they will rely. Petitioner therefore expressly pleads all claims and factual allegations herein in the alternative and upon information and belief where necessary, and reserves the right to amend, supplement, or conform the pleadings to the evidence as soon as Respondents disclose the administrative record, custodial documentation, and all records relating to arrest, detention, supervision, revocation, removal, reinstatement, parole, or any other asserted basis for custody.

15

67. More specifically, Petitioner reserves the right to amend this Petition to assert, develop, or refine any argument that Respondents' detention theory rests on an invalid or non-operative prior order; an improperly executed or legally insufficient reinstatement; an unlawful revocation of supervision or parole; a misclassification under § 1225 rather than § 1226; a post-order detention theory under § 1231 not supported by statute or regulation; an administrative warrant obtained, executed, or served only after arrest; or any other defect revealed by the administrative file, declarations, or return. No omission in this initial emergency filing should be construed as a waiver of any statutory, regulatory, constitutional, evidentiary, suppression, or remedial argument arising from facts not yet disclosed to Petitioner.

68. Petitioner further alleges that the Government's withholding of the administrative record, coupled with the likelihood of transfer or rapid movement through multiple facilities, substantially impairs Petitioner's ability to identify the true legal basis for detention and to test Respondents' assertions in real time. For that reason as well, Petitioner respectfully submits that any uncertainty created by Respondents' failure to produce the file should be construed against Respondents, not against the detained person whose liberty they have restrained.

69. Accordingly, Petitioner respectfully requests that this Court construe this emergency Petition liberally to encompass all viable statutory and constitutional challenges to the legality of present custody, prohibit transfer or removal pending adjudication, require prompt production of the complete administrative record, and grant immediate release or such other relief as the Court deems just and proper if Respondents cannot promptly establish, with competent and contemporaneous evidence, a lawful basis for arrest and detention.

## THE APPLICABLE LEGAL FRAMEWORK

70. The section applies if DHS claims it is detaining him under §§ 1225(b)(2) or 1226.

71. The INA has three main detention rules. First, 8 U.S.C. § 1226 covers ordinary removal proceedings under 8 U.S.C. § 1229a. A person detained under § 1226(a) can usually ask for bond. See 8 C.F.R. §§ 1003.19(a), 1236.1(d). Some people with certain criminal histories may be held without bond under § 1226(c). Second, 8 U.S.C. § 1225(b)(1) and (2) covers some people in expedited-removal proceedings

16

and some people who are seeking admission. Third, 8 U.S.C. § 1231 covers detention after a final order of removal.

72. This case is presumably about the line between § 1226(a) and § 1225(b)(2). After IIRIRA, the government's own regulations treated people who had entered without inspection but were already living inside the country under § 1226(a), not § 1225. In 1997, the agency said exactly that: people "present without having been admitted or paroled" would still be "eligible for bond and bond redetermination." 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). New Jersey courts have recognized the same history. In *Bethancourt Soto v. Soto*, Judge O'Hearn explained that, before July 2025, DHS itself admitted that people arrested after living inside the United States were treated under § 1226(a), and that this changed only when ICE suddenly changed its position in July 2025. Judge O'Hearn also noted that, until that change, immigration authorities "detained arriving aliens" under § 1225(b), while "[n]oncitizens who were present without admission were detained under the discretionary rules of 8 U.S.C. § 1226(a)."

73. That changed in July 2025. DHS adopted a new position that many people who entered without inspection, even if they had lived here for years, should now be treated as if they were detained under § 1225(b)(2). The BIA later adopted that position in *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). **The practical effect is severe.** It strips bond jurisdiction from people who were long treated as § 1226(a) detainees. Judge O'Hearn explained that this new interpretation could "subject[] millions of noncitizens to mandatory prolonged detention without the opportunity for release on bond, no matter how long they have resided within the country." Courts in New York rejected this new reading early. In *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (E.D.N.Y. Nov. 10, 2025), Judge Choudhury held that a woman who had been paroled into the country, lived in New York for years, worked, cared for her U.S.-citizen child, and was then arrested after a credible-fear interview was not subject to mandatory detention under § 1225(b). The court held that her detention "falls squarely within the discretionary detention framework of Section 1226(a)," and stressed that "[n]o one at DHS or ICE ever made any individualized determination that Rodriguez-Acurio poses a flight or public safety risk

17

before she was suddenly arrested and detained." The Southern District reached the same conclusion. In *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *4–5 (S.D.N.Y. Aug. 13, 2025), Judge Ho held that §§ 1225 and 1226 are "mutually exclusive" and that "Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States." That rule was later quoted with approval by courts in this Circuit. In *Perez v. Francis*, No. 25-cv-8112, 2025 WL 3110459, at *3 (S.D.N.Y. Nov. 6, 2025), the court likewise rejected *Matter of Yajure-Hurtado* and held that detention of people arrested while living in the United States is governed by § 1226(a), not § 1225(b)(2). *Rodriguez-Acurio* also noted that DHS's detention theories in these cases have been "imprecise and shifting," which further undermines reliance on § 1225(b).

74. New Jersey courts soon followed. In *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *3–4, *8 (D.N.J. Sept. 26, 2025), the court described DHS's July 2025 "change in statutory interpretation" and recognized that, before that shift, "the predominant form of detention authority" for noncitizens arrested in the interior was § 1226(a). In *Bethancourt Soto v. Soto*, No. 25-cv-16200 (D.N.J. Oct. 22, 2025), Judge O'Hearn explained that this new policy "potentially subjects millions of noncitizens to mandatory prolonged detention without the opportunity for release on bond, no matter how long they have resided within the country," even though DHS had long treated "[n]oncitizens who were present without admission" under the discretionary rules of § 1226(a). Judge O'Hearn also held that § 1225(b)(2)(A) applies only when a person is actually "seeking admission," and that this phrase "necessarily connotes some affirmative, present-tense action." He rejected DHS's reading because it "violates the rule against surplusage and negates the plain meaning of the text." Judge Semper reached the same result in *Contreras Maldonado v. Cabezas*, Civil Action No. 25-13004 (D.N.J. Oct. 23, 2025), holding that "the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicate that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States," and therefore that "§ 1226, not § 1225, is applicable." Other New Jersey decisions followed the same path. In *Guaman Lliguicota v. Cabezas*, No. 2:25-cv-17216 (D.N.J. Dec. 5, 2025), the court held that a noncitizen who had lived in the United States

18

for more than twenty years and was arrested in the interior was "not properly detained under § 1225(b)(2)," and that detention, if permitted at all, had to proceed under § 1226(a). And in *Jagpreet Singh v. Tsoukaris*, No. 1:26-cv-01531 (D.N.J. Feb. 19, 2026), Judge O'Hearn noted that the petitioner had been apprehended inside the United States after living here for an extended period and therefore "should have been detained under 8 U.S.C. § 1226, which requires an opportunity to seek bond."

75. That matters here. Section 1225(b)(2) is not a free pass to detain everyone who once entered without inspection. It applies to a narrower group: people who are actually "seeking admission." People arrested years later while living inside the country are different. New York and New Jersey courts have repeatedly held that, in that situation, detention usually falls under § 1226(a), not § 1225(b)(2). And § 1226(a) requires a real custody decision, including an individualized assessment, and gives the immigration court bond authority.

### STARTING IN 2025: THE EROSION OF THE IMMIGRATION BOND SYSTEM AND THE NEED FOR HABEAS RELIEF

76. Starting in 2025, the immigration bond system changed in a major way. For decades, bond hearings were the normal way many detained noncitizens received individualized custody review. But in 2025 and 2026, that system was sharply narrowed. The change appears in three places at once: in DHS's new detention position, in EOIR and BIA guidance stripping immigration judges of bond authority, and in federal court decisions and public reporting describing bond hearings being denied or cut off in practice.[1] The result is not just a statutory dispute. It raises serious due process concerns because the ordinary bond process can no longer be assumed to function as a meaningful safeguard.

77. The shift began in mid-2025. On September 5, 2025, the BIA issued *Matter of Yajure-Hurtado* and held that, "[b]ased on the plain language of section 235(b)(2)(A)," a noncitizen present in the United States without admission is detained under INA § 235(b)(2), not INA § 236(a), and that the immigration judge therefore "lacked authority" to conduct a bond redetermination.[2] Practice guidance published immediately afterward explained that the decision rested on "a new reading of § 235, adopted by DHS in July 2025," and that it "strips Immigration Judges of jurisdiction over custody redeterminations" for many people who entered without inspection, "regardless of how long they have been residing in the

country and where they were apprehended."[3] That matched what district courts were already seeing. New York and New Jersey judges described DHS's new detention theory as a change in statutory interpretation and rejected it, holding that many people arrested in the interior after years of residence were detained, if at all, under § 1226(a), not § 1225(b)(2).[4]

78. Public reporting soon showed that the legal shift was changing what actually happened in immigration court. Bloomberg Law reported that immigration courts had "largely stopped conducting bond hearings," even after federal judges had held that many detainees were entitled to seek release.[5] Reuters then reported that Chief Immigration Judge Teresa Riley issued internal guidance telling immigration judges they were not bound by a federal ruling that had rejected the no-bond policy. According to the guidance later reproduced in public practice materials, Riley instructed judges: *"Maldonado Bautista is not a nationwide injunction and does not purport to vacate, stay or enjoin Yajure Hurtado. Therefore, Yajure Hurtado remains binding precedent on agency adjudicators."*[6] Reuters further reported that lawyers were already receiving reports that immigration judges were continuing to deny bond hearings despite adverse district court rulings.[7] Those reports do not decide this case by themselves. But they do show the real-world setting in which detainees now seek habeas relief: a system where the formal availability of bond review and the actual practice on the ground sharply diverged.

79. The same period produced direct judicial concern that immigration judges were being stripped of bond authority in these cases. In *Rodriguez-Acurio v. Almodovar*, Judge Choudhury held that the petitioner's detention "falls squarely within the discretionary detention framework of Section 1226(a)," and stressed that "[n]o one at DHS or ICE ever made any individualized determination" of flight risk or danger before detention.[8] In New Jersey, Judge O'Hearn held that § 1225(b)(2)(A) applies only when a person is actually "seeking admission," and that this phrase "necessarily connotes some affirmative, present-tense action." She rejected DHS's contrary reading because it "violates the rule against surplusage and negates the plain meaning of the text."[9] Judge Semper then held that "the plain text of Sections 1225 and 1226" shows that § 1225(b)(2) does not apply to people arrested on a warrant while

20

living in the United States, and therefore that "§ 1226, not § 1225, is applicable."[10]

80. Judge Sunshine Sykes's *Maldonado Bautista* rulings are especially important here for two separate reasons. First, they rejected DHS's July 8, 2025 no-bond policy on the merits. Second, and just as important, they documented that even after the court ruled, EOIR and immigration judges were still refusing to provide the bond hearings the judgment required. That second point is critical because it shows why a habeas court cannot simply assume the ordinary bond process remains an effective safeguard.

81. In the December 18, 2025 final judgment, Judge Sykes made the operative rule unmistakable. She declared that the certified class members "are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)." She further declared that they "are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." And she "VACATE[D] the Department of Homeland Security policy described in the July 8, 2025, 'Interim Guidance Regarding Detention Authority for Applicants for Admission' . . . as not in accordance with law."[11] Those are not stray remarks. They are the judgment itself.

82. That judgment alone was substantial. It did three things at once. It rejected DHS's no-bond interpretation, restored the correct detention framework under § 1226(a), and confirmed that the class was entitled to immigration-judge bond hearings. But what makes Judge Sykes's later orders especially important is that the court found those directives still were not being followed. In her December 18, 2025 reconsideration order, Judge Sykes wrote that the record now reflected "newly emerged facts" showing two categories of noncompliance. One was "New Facts Pertaining to IJ's Lack of Compliance." There, the court stated that Respondents had "persisted in denying class members bond hearings in two ways," and that the exhibits showed immigration judges "continue to deny bond hearings for members of the Bond Eligible Class despite the Court's determination that the DHS Policy is unlawful." The court added that this was happening "in at least ten other states."[12]

83. Judge Sykes also identified what she described as the more troubling category: agency direction to

21

ignore the federal ruling. Under the heading "New Facts Pertaining to Respondents' Policies," she wrote that evidence showed "Respondents' direction to IJs that they should disregard this Court's orders." She then stated that Petitioners had provided evidence that the Office of Immigration Litigation had issued "*a memorandum instructing IJs to 'hold the position that Yajure Hurtado remains good law.*'" The court cited multiple immigration-judge orders that continued "denying bond for lack of jurisdiction pursuant to Yajure Hurtado."[13] This is highly significant. It means the federal court was not dealing with isolated error. It was confronting a systemic refusal to restore bond review even after judgment.

84. That concern became even sharper in Judge Sykes's February 18, 2026 enforcement order. There, the court focused on why immigration judges were still following *Matter of Yajure-Hurtado* after the final judgment had held the opposite. Judge Sykes wrote that the court had asked Respondents "to explain why IJs continue to rely on Yajure Hurtado despite the fact its underlying legal interpretation was found irreconcilable with this Court's declaration of law." She then recorded Respondents' position that *Yajure-Hurtado* remained a "valid legal interpretation" binding immigration judges and that there was nothing beyond "the interpretation and the binding controlling authority of Yajure Hurtado" justifying "the continued detention of and denial of bond hearings for [Bond Eligible Class members]."[14]

85. The most important language in that enforcement order comes a few pages later. Judge Sykes wrote: "All Yajure Hurtado does is parrot the DHS Policy. Yajure Hurtado contains an identical, incorrect interpretation of law." She then held that "Yajure Hurtado is functionally equivalent to the DHS Interim Policy," and concluded: "based on the representations Respondents have made to the Court, it is evident that further relief is both necessary and proper. The Court VACATES Yajure Hurtado under the APA."[15] That sequence matters enormously. It shows that the district court did not vacate *Yajure-Hurtado* as some abstract academic exercise. It did so because continued reliance on that BIA decision was the mechanism by which EOIR and DHS were still denying hearings the judgment had already restored.

86. Judge Sykes also made clear that the noncompliance had real consequences on the ground. In the same February 18 order, she wrote that Respondents "choose to disregard this Court's declaration of law and

22

vacatur of unlawful agency action," and that the practical result was that Bond Eligible Class members "must affirmatively seek habeas relief because Respondents deny them the individualized bond hearings to which the class members are entitled."[16] That is about as strong as a federal district court can be on this point. It directly supports the proposition that habeas is necessary when the ordinary bond system is not functioning.

87. The Chief Immigration Judge's January 13, 2026 guidance confirms why Judge Sykes had to go that far. **Publicly reproduced EOIR guidance from Chief Immigration Judge Teresa Riley told immigration judges that "Maldonado Bautista is not a nationwide injunction and does not purport to vacate, stay or enjoin Yajure Hurtado**. Therefore, Yajure Hurtado remains binding precedent on agency adjudicators." The guidance also stated that a declaratory judgment "is not an equitable remedy" and "does not, by itself, have the effect of compelling a party to act or refrain from acting in a particular way."[17] That guidance is directly relevant. It shows that EOIR leadership was affirmatively telling immigration judges to keep following Yajure-Hurtado even after a federal court had declared the opposite rule for the certified class.

88. That same point was captured in public reporting. Reuters reported that the top immigration judge had instructed judges that they should continue denying bond hearings despite federal rulings, and that lawyers were receiving reports of continued denials on that basis.[18] Bloomberg Law likewise reported that immigration courts had "largely stopped conducting bond hearings" despite the federal decisions restoring bond eligibility.[19] These reports do not decide the legal question by themselves, but they are probative of the real-world breakdown in the bond system that the federal courts were then forced to address.

89. Other California federal decisions confirm the same pattern. In *J.S. v. Wofford*, Magistrate Judge Riordan did not merely recommend a bond hearing. He also recommended that Respondents "be ordered not to assert, at a bond hearing or appeal of the immigration judge's bond hearing determination, that the immigration judge lacks jurisdiction pursuant to Matter of Yajure-Hurtado." He explained why: the record included immigration-judge orders "denying Petitioner's requests for custody redetermination on

23

jurisdictional grounds pursuant to Yajure Hurtado." He then cited Judge Sykes's earlier statement that "Yajure Hurtado is no longer controlling; the legal conclusion underlying the decision is no longer tenable," and concluded that Respondents "may not use it as a back door to deny petitioner effective relief."[20]

90. That recommendation is especially important because it shows that the problem was not hypothetical. Another federal judge in California had before him actual immigration-judge orders denying bond jurisdiction under *Yajure-Hurtado* even after the federal rulings. And the remedy he thought necessary was not just "hold a hearing someday." It was an injunction preventing DHS from re-arguing lack of bond jurisdiction at the hearing or on appeal. That is a strong indicator that ordinary administrative review had ceased to be dependable.

91. The same concern appears in the February 11, 2026 updated *Maldonado Bautista* practice advisory prepared by class counsel. It reported that after "reports that the Department of Justice ('DOJ') had instructed IJs not to comply with the Court's order," class counsel sought further relief. It also explained that, although "there was a short period of time when some IJs" granted bond after the district court's declaratory judgment, "since mid-January 2026, IJs have been instructed to apply Yajure Hurtado so class members must file habeas petitions to seek a bond hearing."[21] That does not replace the court orders. But it fits them. It helps explain why Judge Sykes later found further relief "necessary and proper."

92. The data point in the same direction. TRAC reported that by March 2025 immigration judges had held 19,099 bond hearings in FY 2025 and granted bond in 5,190 of them.[22] Public analyses later reported that, once DHS's new position took hold and no-bond rulings spread, release on bond was "no longer an option for many people," and that by late 2025 detention practice had become far more restrictive for people who previously would have received individualized custody review.[23] This helps explain why the denial of bond jurisdiction was so consequential. It did not merely alter a legal label. It removed the main route many detainees had used to obtain individualized review.

93. There was also broader disruption inside EOIR during the same period. Official and public sources

24

reflect abrupt staffing changes and instability among immigration judges and EOIR leadership. <u>A March 2025 Senate letter stated that EOIR had "abruptly terminated 20 immigration judges," including assistant chief immigration judges and judges not yet sworn in, while also removing BIA members.</u>[24] Public reporting likewise described firings of newly hired immigration judges and assistant chief immigration judges even as the court backlog remained massive.[25] This does not prove why any single bond hearing was denied. But it does provide important context. A court cannot simply assume that the administrative bond process remained a stable, effective safeguard while the system was simultaneously changing its detention theory, its guidance to immigration judges, and its judicial personnel.

94. Taken together, these developments show why habeas relief is necessary. The premise of exhaustion or deference to the bond system is that the bond system is real, available, and capable of giving prompt individualized review. **But when DHS adopts a new interpretation that treats large groups of long-term residents as bond-ineligible; when the BIA endorses that theory; when the Chief Immigration Judge tells immigration judges to keep denying bond hearings despite contrary district court rulings; when public reporting shows that immigration courts largely stopped conducting those hearings; and when federal judges are forced to vacate the governing BIA decision itself, a habeas court is not required to pretend that the ordinary administrative process will cure the problem**. In that setting, if detention is unlawful, unconstitutional, or prolonged without meaningful review, release—or at minimum a constitutionally adequate custody hearing ordered by this Court—falls squarely within the traditional scope of habeas. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Velasco Lopez v. Decker*, 978 F.3d 842, 850–54 (2d Cir. 2020); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention.").

**THE EXECUTIVE-BRANCH STRUCTURE OF THE IMMIGRATION COURT SYSTEM COUNSELS AGAINST TREATING THE BOND PROCESS AS A FULL CONSTITUTIONAL SAFEGUARD**

95. Immigration judges are not Article III judges. They work within EOIR, which is part of the Department of Justice. Congress's own research arm has noted that immigration courts are not part of the federal

judiciary, but are instead an administrative system housed in DOJ. EOIR's structure places immigration judges within an executive hierarchy overseen by the EOIR Director and the Chief Immigration Judge. They do not have life tenure or salary protection.

96. That matters to the remedy question. Immigration judges decide removal and custody matters while remaining employees of the same branch that enforces the immigration laws. Unlike administrative law judges who enjoy specific statutory protections under the APA, immigration judges have historically lacked similar structural insulation. Public reporting and scholarship have long observed that immigration courts operate within a framework shaped by DOJ leadership, internal management directives, and performance pressures.

97. The Attorney General retains broad supervisory power over EOIR and can shape policy and operations throughout the system. EOIR has publicly emphasized case-completion targets and backlog reduction. That kind of administrative control is not improper on its own. But it is different from the independence that Article III judges have by design.

98. Recent personnel decisions make the point even clearer. Reporting in 2025 and 2026 described the removal or non-retention of many immigration judges. The Court need not decide why those actions happened. It is enough to recognize that immigration judges work within a normal executive personnel system and remain subject to that chain of command.

99. None of this means any individual immigration judge is biased. It does mean, however, that the administrative bond process should not automatically be treated as a complete constitutional safeguard against unlawful detention, especially when internal rules or BIA decisions have already narrowed or eliminated bond jurisdiction for whole classes of detainees. In that setting, habeas serves its usual role as an outside constitutional check on executive detention.

### SEVERE STRUCTURAL LIMITS IN THE IMMIGRATION BOND SYSTEM SUPPORT RELEASE THROUGH HABEAS

100. These features matter most when the Court turns to remedy. If detention is unlawful because it is ultra vires, because it violates the Constitution, or because it continues without meaningful process, then habeas must provide effective relief. The Government may say the Court should simply remand for a

bond hearing. But the record shows that bond hearings have in some cases been curtailed or blocked by policy and internal guidance. Sending a detainee back into that same system does not necessarily ensure prompt or meaningful review.

101.    Even where a bond hearing is available on paper, the Court is not required to treat the administrative process as an automatic substitute for constitutional adjudication. Immigration judges remain executive-branch officials subject to agency supervision. That does not question the good faith of individual judges. It simply underscores why habeas exists: to provide an independent judicial forum when physical liberty is at stake.

102.    The Supreme Court and the Second Circuit have long recognized that § 2241 lets federal courts order release where detention exceeds statutory or constitutional limits. See *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir. 1998); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). Where detention is unlawful, release is an ordinary habeas remedy.

103.    If the Court finds that Petitioner's custody is ultra vires or constitutionally defective, it need not assume that more administrative proceedings will fix the problem. The Suspension Clause requires habeas review to remain meaningful. Requiring a detainee to return to an administrative process that has been materially weakened as a mechanism for custody review would not necessarily vindicate constitutional rights. In that setting, immediate release, or release on reasonable conditions set by this Court, may be the correct remedy.

## THE EMERGING NEW YORK HABEAS CONSENSUS ON WIDESPREAD MANDATORY ICE DETENTION

104.    The federal courts in New York in 2025 and 2026 developed a clear and increasingly direct habeas case law dealing with categorical § 1225(b)(2) detention[1], street and interior arrests of long-present noncitizens, and the absence of contemporaneous individualized custody review. Across cases, courts treated these defects not as minor irregularities, but as statutory violations with constitutional

---

[1] See Appendices A & B cited by Judge Kaplan in *Barco Mercado v. Francis*, 25-cv-06582 (2025 WL (S.D.N.Y. Nov. 26, 2025) of a running tally in November 2025 of granted and denied habeas petitions based on DHS and ICE violations. A conservative estimate today is over 630 immigration habeas granted in 2025 to 2026.

27

consequences that required immediate judicial action.

105.     In *Diallo v. Joyce*, Judge Subramanian granted habeas relief and ordered release where ICE detained a long-time New York resident without a valid statutory basis and without adequate process, stating in plain terms: **"None of this had to happen. All of it is illegal."** *Diallo v. Joyce*, No. 25-CV-9909 (AS), slip op. at 1 (S.D.N.Y. Dec. 23, 2025). In *Gonzalez v. Joyce*, Judge Torres granted the writ and ordered release where courthouse arrests resulted in "arbitrary detention" with "no process at all," and where the record showed no individualized assessment of danger or flight risk. *Gonzalez v. Joyce*, No. 25 Civ. 8250, 2025 WL 2961626, at *2–4 (S.D.N.Y. Oct. 19, 2025). Judge Engelmayer did the same in *Funes Gamez v. Francis*, ordering release after ICE revoked supervision without notice or a prompt interview and holding that the petitioner was "in custody in violation of the Constitution." *Funes Gamez v. Francis*, No. 25 Civ. 7429 (PAE), slip op. at 43, 48–49 (S.D.N.Y. Nov. 24, 2025).

106.     These cases fit within a broader SDNY line that includes *Valdez*, *Chipantiza-Sisalema*, *Lopez Benitez*, and *Samb*. Across them, the same principle appears again and again: detention without proper statutory authority and without timely, individualized process is unlawful and immediately remediable in habeas.

107.     The same consensus appears in the cases rejecting categorical § 1225(b)(2) detention for long-present noncitizens arrested in the interior. After the BIA issued *Matter of Yajure Hurtado*, New York federal courts repeatedly held that such detainees are governed, if at all, by § 1226(a), not § 1225(b)(2). The best-known decision is *Barco Mercado v. Francis*, 2025 WL 3295903, at *12–14 (S.D.N.Y. 2025), which collected authority and explained why applying a "discretion-free" § 1225 regime to long-present residents conflicts with both the INA and due process. Later cases followed *Barco Mercado*, including *Yao v. Almodovar* and *M.K. v. Arteta*, both of which held that detention "pursuant to the wrong statute" is unlawful because it strips detainees of the procedures Congress and the Constitution require.

108.     In some cases, courts ordered prompt bond hearings with proper safeguards. In others, especially where the defect was the complete absence of individualized process under a categorical mandatory-detention theory, they ordered immediate release. The Eastern District followed the same path in

28

*Hyppolite* and later cases citing it. Those cases show that due process may require notice and a pre-deprivation hearing before re-detention, with the Government bearing the burden to justify custody.

109. That leads directly to remedy. When detention is unauthorized under the governing statute, it is ultra vires. Habeas has always provided release, not just advisory correction, when custody exceeds lawful bounds. See *Demore*, 538 U.S. at 516–17; *Zadvydas*, 533 U.S. at 687. As Chief Justice Roberts wrote in *Munaf v. Geren*, the typical remedy for unlawful executive detention is release. 553 U.S. 674, 693 (2008). The Supreme Court has said the same many times. See *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

110. New York courts have repeatedly followed that rule. They have not limited themselves to saying detention was flawed. They have ordered release. That includes *Huang*, *Diallo*, *Gonzalez*, *Barco Mercado*, *Yao*, *M.K.*, *Funes Gamez*, *Hyppolite*, *Pesantez Castro*, *Gopie*, and others. Those decisions show that where detention is unlawful, release remains the normal habeas remedy.

## THIS CASE

111. This is an emergency habeas case about a basic constitutional and statutory question. *Can DHS racially profile and stop an Ecuadorian man on the street because of his appearance, question him about national origin, seize him, search him, and arrest him without probable cause or a valid arrest warrant?* And can DHS then keep detaining him without a hearing and without complying with statutory and constitutional safeguards?

112. As in many other cases, DHS will likely produce an after-created arrest warrant and claim the arrest was based on it, even though the warrant was generated after the arrest and was not previously issued or approved through the chain of command as the statute and regulations require.

113. The law says that civil immigration detention is a grave deprivation of liberty and that due process requires meaningful safeguards at the moment the Government decides to arrest and detain someone. Courts in this District have repeatedly ordered relief under habeas where ICE detained people without making the individualized assessment that § 1226(a) and the regulations require, and where ICE tried to justify detention after the fact instead of through contemporaneous process. That includes *Lopez*

29

*Benitez*, *Barco Mercado*, *Kelly*, *Valdez*, *Chipantiza-Sisalema*, and *Gonzalez*.

114.    Petitioner therefore respectfully asks this Court to act now: to prevent transfer, compel disclosure of the key documents, require Petitioner's production before the Court, and order immediate release.

## JURISDICTION AND VENUE

115.    This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody under the color of United States authority and challenges the legality of that custody as unconstitutional and in violation of statute and regulation.

116.    The venue is proper in the EASTERN DISTRICT OF NEW YORK because the Petitioner was seized in New York, was detained, and processed at ICE facilities within this District, and is still currently at the Metropolitan Detention Center, MDC, Brooklyn, NY. Respondents direct, control, and administer Petitioner's detention and transfer decisions in and from this District.

117.    This Court has authority to issue a temporary restraining order and preliminary injunctive relief "as law and justice require," including to prevent transfer that would impair the Court's jurisdiction and ability to order effective habeas relief.

## THE PARTIES

118.    FELIPE FERNANDO FLORES is a resident of Freeport, NY.

119.    Respondent Ken Genalo is the Field Director, Enforcement & Removal Operations of ICE, and is a legal custodian of Petitioner.

120.    Respondent Todd Lyons is the Acting Director of ICE and is responsible for ICE detention policies and practices.

121.    Respondent Kristi Noem is the Secretary of the Department of Homeland Security and is responsible for DHS policies and enforcement practices affecting detention

122.    Respondent Pamela Bondi is the Attorney General of the United States and is sued in her official capacity in connection with the federal custody at issue.

## ARGUMENT

## CLAIM ONE

**IF DHS CLAIMS IT IS DETAINING HIM UNDER § 1225(b)(2), THE PETITIONER'S WARRANTLESS ARREST AND DETENTION WITHOUT A CONTEMPORANEOUS, INDIVIDUALIZED CUSTODY DETERMINATION VIOLATES THE FOURTH AMENDMENT, THE FIFTH AMENDMENT, AND THE IMMIGRATION AND NATIONALITY ACT**

123.    The Fifth Amendment bars the Government from depriving any person of liberty without due process of law. Freedom from physical restraint lies at the core of the liberty the Constitution protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). That protection extends to noncitizens held in immigration custody. *Id.* at 693. And where detention results from executive action without the normal protections of criminal process, habeas courts must apply the "most searching review." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008); see also *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

124.    These principles apply in full in immigration detention cases. In *Jennings v. Rodriguez*, the Supreme Court rejected a statutory bond-hearing rule as a matter of construction, but it made clear that constitutional challenges to immigration detention remain fully available in habeas. 583 U.S. 281, 292–95 (2018). And in *Demore v. Kim*, the Court upheld mandatory detention only in a setting it understood to be limited in duration and accompanied by the procedures that Congress had prescribed. 538 U.S. 510, 528–31 (2003). So even when a detention statute exists, detention still must rest on lawful authority and constitutionally sufficient process.

125.    The recent cases in the Eastern and Southern Districts of New York now establish a clear rule for the kind of detention challenged here. DHS may not use 8 U.S.C. § 1225 as a catchall detention statute for people who have been living in the United States for years and are arrested in the interior. If detention is governed by 8 U.S.C. § 1226(a), DHS must make a real, individualized custody determination at the time of arrest, or before it, and must provide the process that goes with that determination. If DHS detains first and tries to justify later, the detention is unlawful from the start.

126.    Judge Choudhury's decision in *Rodriguez-Acurio v. Almodovar* is central. There, the court held that the petitioner's detention "falls squarely within the discretionary detention framework of Section 1226(a), which permits detention when a DHS officer has made an individualized determination that a noncitizen poses a flight or safety risk." The court then found that "[n]othing in the record before this Court shows any change in circumstances" and that "[n]o one at DHS or ICE ever made any

31

individualized determination that Rodriguez-Acurio poses a flight or public safety risk before she was suddenly arrested and detained." The court held that detention without "any notice or opportunity to be heard before a DHS officer or an immigration judge" violated due process, and it granted the petition. *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *1, *23–24 (E.D.N.Y. Nov. 28, 2025) .

127.    That reasoning fits here. Petitioner was seized in the interior, not processed as a newly arriving alien at a port of entry, and not given a contemporaneous custody determination based on danger or flight risk. Instead, he was arrested first, detained first, and only later did the DHS try to explain the detention through paperwork and litigation. *Rodriguez-Acurio* rejects that sequence.

128.    Judge Choudhury reaffirmed the same rule in *Covelli-Chaparro v. Bondi*. There, the court held that the petitioner's detention was governed by § 1226(a), not § 1225(b)(2), and that it violated procedural due process. The court ordered immediate release and further enjoined Respondents from denying bond in any later proceeding on the ground that he must be detained under § 1225(b). *Covelli-Chaparro v. Bondi*, No. 2:26-cv-00118 (NJC), slip op. at 2–3 (E.D.N.Y. Jan. 15, 2026) . The court also made clear that a long-present noncitizen who had been paroled in and later released on recognizance was not "seeking admission" within the meaning of § 1225(b)(2). *Id.* .

129.    Judge Morrison's decision in *Hyppolite v. Noem* is equally strong. There, the court held that detention was governed by § 1226(a), "which require[s] that Respondents provide Hyppolite with notice and a bond hearing before a neutral magistrate." It stressed that "there is no dispute that Hyppolite received no such hearing before he was jailed, nor has he received one since." The court then held that, because he "did not receive the process he was plainly due under the Constitution and laws of the United States before he was deprived of his liberty," he was entitled to habeas relief and immediate release. *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), slip op. at 4 (E.D.N.Y. Sept. 29, 2025) .

130.    Judge Merchant did the same in *Artiga v. Genalo*. There too, the court granted release rather than sending the petitioner into a post hoc administrative process. *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025) .

32

131.    The Southern District decisions line up with this. In *Lopez Benitez v. Francis*, Judge Ho held that the petitioner was detained under § 1226(a), not § 1225. He rejected the DHS 's post hoc shift in statutory theory and held that the court could not credit "Respondents' new position as to the basis for Mr. Lopez Benitez's detention, which was adopted post hoc and raised for the first time in this litigation." He also held that "before the Government may exercise such discretion to detain a person," § 1226(a) and 8 C.F.R. § 1236.1(c)(8) "require ICE officials to make an individualized custody determination." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484–85, 490 (S.D.N.Y. 2025) .

132.    Judge Torres said the same in *Kelly v. Almodovar*. She rejected the idea that a mere review of a rap sheet counted as an individualized custody decision. She held that if ICE wishes to detain under § 1226(a), it "must allow the noncitizen to 'demonstrate to the satisfaction of the officer that [] release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" She found that Kelly was not allowed to do that and granted relief. *Kelly v. Almodovar*, No. 25-CV-6448, 2025 WL 2381591, at *3–4 (S.D.N.Y. Aug. 15, 2025) .

133.    Judge Liman's decision in *Huamani v. Francis* makes the same point in simpler terms. There, he held that where "Respondents do not argue that Petitioner was afforded any sort of process before her re-detention," the petitioner "is therefore entitled to release." *Maria Jose Tumba Huamani v. Francis*, No. 25-cv-8110 (LJL), 2025 WL 3079014, at *8–9 (S.D.N.Y. Nov. 4, 2025) .

134.    Taken together, these decisions establish a uniform rule in this District. DHS may not invoke § 1225 as a categorical detention authority for individuals arrested in the interior after years of residence here. If DHS detains under § 1226(a), it must make a contemporaneous, individualized custody determination based on a lawful statutory basis. And it may not rely on later-issued paperwork, later review, or shifting litigation positions to justify detention after the fact.

135.    Where, as here, Petitioner was seized without a warrant, without a contemporaneous individualized custody determination, without any real evaluation of flight risk or danger, and is now detained based on a litigation-driven statutory theory, the detention is unlawful from the beginning.

33

Under the repeated holdings of the Eastern and Southern Districts, the proper remedy is immediate release, not remand.

## CLAIM TWO

### IF DHS CLAIMS IT IS DETAINING HIM UNDER § 1231, THE PETITIONER'S WARRANTLESS ARREST AND DETENTION WITHOUT A CONTEMPORANEOUS, INDIVIDUALIZED CUSTODY DETERMINATION VIOLATES THE FOURTH AMENDMENT, THE FIFTH AMENDMENT, AND THE IMMIGRATION AND NATIONALITY ACT

136.     If DHS claims that it is detaining him under 1231, we repeat all the arguments made above in the Preface section of this habeas petition.

137.     If Respondents claim detention under § 1231 based on a prior removal order, order of supervision, warrant of removal, or reinstatement, the same statutory and constitutional custody principles apply. At a minimum, Respondents were required to possess and rely upon the operative administrative record, to identify the correct statutory basis for detention, to comply with the governing regulations, and to afford Petitioner constitutionally adequate notice and an opportunity to be heard. Based on the information currently available, those steps were not taken. No valid warrant or reinstatement paperwork has been shown to counsel; no administrative file has been produced; no contemporaneous custody determination has been disclosed; and no meaningful process has been afforded.

138.     Petitioner further pleads in the alternative that, if Respondents later contend that Petitioner was on some form of supervision or conditional release, any revocation of that status was unlawful because Petitioner was not given the basic process that the regulations and the Due Process Clause require. As *Funes*, *Zhu*, *Diallo*, and *Ndoye* demonstrate, at a minimum that process includes contemporaneous notice of the reasons for redetention and a meaningful opportunity to respond. See *Funes*, No. 25 Civ. 7429, 2025 WL 3263896; *Zhu*, 798 F. Supp. 3d 400; *Diallo*, No. 25-CV-9909; *Ndoye*, No. 25-CV-8856. The Government may enjoy discretion in the immigration context, but it may not dispense with the procedures that cabin that discretion when liberty is at stake.

139.     Petitioner also pleads, in the alternative, that if Respondents later assert a prior expedited-removal order as the basis for detention or reinstatement, Respondents must prove the existence of an

34

actual, operative order, not merely an inadmissibility notice or other incomplete form. *Rodriguez-Acurio* demonstrates that where the form's order section is blank, the document is not an order at all. And where the Government cannot demonstrate that the operative order existed and took legal effect, it cannot rely on post-order detention authority. See *Polat*, 2025 U.S. Dist. LEXIS 260802; *Rodriguez-Acurio*, No. 2:25-cv-6065.

## CLAIM THREE

### PETITIONER'S WARRANTLESS SEIZURE AND ARREST VIOLATED THE FOURTH AMENDMENT, 8 U.S.C. § 1357(a)(2), AND THE GOVERNING IMMIGRATION ARREST REGULATIONS

### The Fourth Amendment Applies Fully to Interior Civil Immigration Arrests

140.     The Fourth Amendment applies fully to civil immigration arrests in the interior of the United States. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1043 (1984). The Second Circuit has recognized that "[t]he Fourth Amendment's protections extend to all persons within the United States, including aliens." *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 234 (2d Cir. 2006). So warrantless civil immigration arrests are limited by both the Constitution and the INA.

141.     That means the DHS cannot seize first and explain later. If ICE officers seized Petitioner on the street without presenting a warrant, without articulating probable cause, and without identifying a lawful basis for the seizure at the time, the arrest was unreasonable under the Fourth Amendment and outside the statute. See *Dunaway v. New York*, 442 U.S. 200, 208–09 (1979); *Beck v. Ohio*, 379 U.S. 89, 91, 96 (1964).

142.     Because the initial seizure was unlawful, the detention that followed is unlawful too.

### Congress Created a Warrant-First Rule for Interior Immigration Arrests

143.     Congress did not create a free-floating power for immigration officers to seize people in the interior and sort out the authority later. The structure of the arrest statutes matters. Under 8 U.S.C. § 1226(a), a person in the interior ordinarily is arrested "[o]n a warrant issued by the Attorney General." The same section then provides for detention, bond, or conditional parole. So the normal model is arrest on a warrant first, followed by custody procedures.

35

144.	The regulations confirm that model. Under 8 C.F.R. § 236.1(b)(1), a person may be arrested and taken into custody under a Form I-200 warrant, and that warrant may be issued only by the officers listed in 8 C.F.R. § 287.5(e)(2), and served only by the officers listed in § 287.5(e)(3). In short, the regulations require advance issuance by designated officers and advance authorization before liberty is restrained.

145.	The Supreme Court described the same structure in *Arizona v. United States*. There, the Court explained that Congress created a "full set of standards" governing immigration arrest authority and that the no-warrant authority is "more limited." 567 U.S. 387, 407–08 (2012). Officers may arrest without a warrant only if they have reason to believe the person is removable and likely to escape before a warrant can be obtained. *Id.* So the warrantless power is the exception, not the default.

**The Administrative-Warrant Scheme Requires Prior Authorization, Not Later Papering**

146.	The warrant rules are not minor technicalities. They are part of the lawful method for making interior immigration arrests. Before an arrest on a warrant, DHS regulations require prior issuance of Form I-200 by a designated official under 8 C.F.R. § 287.5(e)(2). That authority is concentrated in supervisory and specially delegated officers. The point is to require review before arrest, not afterward.

147.	The regulations also limit who may make a warrantless arrest at all. Under 8 C.F.R. § 287.5(c)(1), only designated officers may exercise that power. And 8 C.F.R. § 287.8(c)(2) says that such officers may arrest without warrant only if they have reason to believe the person is removable and "is likely to escape before a warrant can be obtained." The same regulation adds that a warrant "shall be obtained in every instance where the person is not likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). That language is mandatory.

148.	The regulations also require basic notice at the time of arrest. The officer must identify himself or herself as an immigration officer and state that the person is under arrest and the reason for the arrest. 8 C.F.R. § 287.8(c)(2)(iii). Where officers do not show a warrant, do not state the basis for arrest, and do not comply with these rules, the arrest is not merely sloppy. It is unlawful.

149.     That is why later-issued paperwork cannot save a street arrest that was unlawful when it happened. The sequence matters. The warrant must come first. A later I-200 does not prove compliance. It proves the opposite.

150.     **The Initial Stop Also Required Specific, Articulable Facts**

151.     Before there could be any lawful arrest, there had to be a lawful stop. The Fourth Amendment does not permit immigration officers to detain someone on the street based on hunch, appearance, or general suspicion.

152.     Under *Terry v. Ohio*, a brief investigatory stop requires "specific and articulable facts" supporting reasonable suspicion. 392 U.S. 1, 21–22 (1968). In the immigration setting, *United States v. Brignoni-Ponce* held that officers may not stop people for immigration inquiry based only on ethnicity or appearance. 422 U.S. 873, 883–87 (1975). They must have particularized facts that warrant suspicion as to the person stopped.

153.     DHS's own regulation says the same thing. Under 8 C.F.R. § 287.8(b)(2), an immigration officer may briefly detain a person for questioning only if the officer has "reasonable suspicion, based on specific articulable facts," that the person is engaged in an offense or is unlawfully present.

154.     The Second Circuit confirms the point. In *Almeida-Amaral*, the court held that a stop unsupported by articulable suspicion raises serious Fourth Amendment concerns, and it made clear that race-based stops would be egregious constitutional violations. 461 F.3d at 235, 239–40.

155.     So if ICE lacked reasonable suspicion to make the stop, everything that followed was tainted from the beginning.

**A Warrantless Immigration Arrest Required Probable Cause and a Real Escape-Risk Basis**

156.     Even if there were a lawful initial encounter, the DHS still needed probable cause before turning it into an arrest. The constitutional rule is basic: probable cause must exist "at the moment the arrest was made." *Beck*, 379 U.S. at 96. Officers cannot detain first and then use later-acquired facts to fill in the missing basis.

157.    Congress wrote that same rule into 8 U.S.C. § 1357(a)(2). That section allows a warrantless arrest only when the officer has "reason to believe" the person is removable and "is likely to escape before a warrant can be obtained." Courts have long treated "reason to believe" in this context as equivalent to probable cause. See *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). The Second Circuit's reasoning is consistent. In *Ojeda-Vinales v. INS*, the court explained that officers may investigate first, then arrest once probable cause exists, not the other way around. 523 F.2d 286, 287–88 (2d Cir. 1975).

158.    The second part of § 1357(a)(2) matters just as much. Even if probable cause existed, officers still could not make a warrantless arrest unless they also had reason to believe the person was likely to escape before a warrant could be obtained. Congress used "and," not "or." The regulations repeat that same structure and say a warrant "shall be obtained" whenever the person is not likely to escape before one can be secured. 8 C.F.R. § 287.8(c)(2)(ii).

159.    So if ICE had neither a valid preexisting warrant nor concrete facts showing probable cause and escape risk at the moment of arrest, the seizure was unlawful under both the Fourth Amendment and the statute.

### Later Paperwork Cannot Cure the Defect

160.    DHS may try to rely on facts learned after arrest or on later-issued documents. But that argument fails. Beck holds that an arrest is judged by what officers knew "at the moment the arrest was made." 379 U.S. at 96. And United States v. Di Re holds that an arrest "is good or bad when it starts and does not change character from its success." 332 U.S. 581, 595 (1948).

161.    That rule is even stricter here because the regulations already tell ICE what to do. If there is no escape risk, get a warrant first. If DHS  instead says this was a warrantless arrest, then it must prove that both elements of § 1357(a)(2) existed at the time of arrest. It cannot switch theories in litigation to rescue a defective seizure.

162.    The post-arrest regulations do not help the DHS either. Under 8 C.F.R. § 287.3, a person arrested without a warrant must be examined by an officer other than the arresting officer unless no other

qualified officer is available, and a custody decision must then be made. Those are safeguards for an already lawful warrantless arrest. They do not create arrest authority where none existed.

**The Record Alleged Here Shows Noncompliance with the Required Arrest Protocol**

163.    Applying the law to the facts alleged here shows why the arrest was unlawful. First, ICE did not proceed on a valid administrative warrant issued in advance by an authorized officer under 8 U.S.C. § 1226(a), 8 C.F.R. § 236.1(b)(1), and 8 C.F.R. § 287.5(e)(2). Petitioner was seized on the street without any warrant being shown.

164.    Second, the officers did not identify specific, articulable facts supporting even a brief stop under the Fourth Amendment and 8 C.F.R. § 287.8(b)(2), much less a full arrest. A street stop based on appearance, hunch, location, or general "operation" objectives is not enough. *Brignoni-Ponce*, 422 U.S. at 883–87; *Almeida-Amaral*, 461 F.3d at 235.

165.    Third, the officers lacked probable cause to believe Petitioner was removable at the moment of arrest. The Constitution and § 1357(a)(2) do not allow officers to seize first and determine legal status later. *Beck*, 379 U.S. at 96; *Ojeda-Vinales*, 523 F.2d at 287–88.

166.    Fourth, ICE did not satisfy the separate "likely to escape" element. Nothing suggests officers could not have used the normal warrant process. To the contrary, the regulations assume they should have done so unless there was real exigency.

167.    And fifth, because the arrest was made without a warrant and outside the narrow conditions of § 1357(a)(2), the seizure was not just unreasonable. It was ultra vires. Congress withheld arrest authority unless those conditions were met.

**The Fourth Amendment Violation Goes to the Legality of the Custody Itself**

168.    This is not just an evidentiary problem. Petitioner remains in custody because of an arrest that was unauthorized when it happened. Habeas exists to address exactly that kind of unlawful executive restraint.

169.    To be sure, *Lopez-Mendoza* held that the exclusionary rule does not automatically apply in every civil removal case. 468 U.S. at 1050–51. But it also recognized the importance of Fourth Amendment limits in immigration enforcement. The Second Circuit has enforced that principle where violations are egregious or undermine reliability. *Almeida-Amaral*, 461 F.3d at 235, 239–40.

170.    The point here is more direct. Petitioner's current detention rests on the arrest itself. If the arresting officers lacked warrant authority, probable cause, and any real escape-risk basis, then the custody that followed was unlawful from the start. That is a proper subject of habeas relief.

**The Proper Remedy Is Habeas Release**

171.    Habeas relief is appropriate because the defect here is not collateral to detention. It is the foundation of detention. Petitioner was seized without a warrant, outside the narrow authority conferred by § 1357(a)(2), and without the procedures the INA and the regulations require. That unlawful seizure produced the custody this Court is now reviewing.

172.    At minimum, this Court should hold that the Fourth Amendment applies fully to interior civil immigration arrests, that § 1357(a)(2) creates a narrow conjunctive exception to the warrant requirement, that "reason to believe" means probable cause, that DHS regulations require advance warrants when no real escape risk exists, that street stops require specific articulable facts, that post-arrest paperwork cannot validate an unlawful seizure, and that detention resting on such an arrest is unlawful and must end.

173.    Because Respondents did not comply with the Constitution, the statute, or the regulations governing immigration arrest authority, the writ should issue and Petitioner should be released.

**CLAIM FOUR**
**PETITIONER CANNOT BE REQUIRED TO SEEK A BOND HEARING IF DOING SO WOULD BE FUTILE**
Exhaustion Is Excused, and a Bond-Hearing Remand Is Not Meaningful Relief, Where DHS Invokes 8 U.S.C. § 1225(b) and Matter of Yajure-Hurtado to Deny Bond Jurisdiction

174.    Petitioner does not seek review of a discretionary bond decision or ask this Court to reweigh danger and flight-risk factors. He challenges DHS 's threshold authority to detain him under 8 U.S.C. §

40

1225(b) at all. He contends that, if he is detainable, it is only under 8 U.S.C. § 1226(a) with the procedures Congress required. Where a petitioner raises that kind of statutory and constitutional challenge to detention itself, exhaustion is not jurisdictional. At most it is prudential, and it yields where administrative review would be futile or inadequate. *McCarthy v. Madigan*, 503 U.S. 140, 146–49 (1992); *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995).

175.    That principle applies with special force here because DHS's own detention theory eliminates any meaningful administrative remedy. In *Matter of Yajure-Hurtado*, the Board held that immigration judges lack authority to hear bond proceedings under § 236(a) for people detained under § 235(b)(2)(A), and that such a detainee is ineligible for later bond under § 236(a). 29 I. & N. Dec. 216, 216, 227 (B.I.A. 2025). So if DHS says Petitioner is detained under § 1225(b), the agency's own precedent says the immigration judge has no bond jurisdiction.

176.    That makes exhaustion futile in the most concrete sense. Petitioner is not skipping a real remedy. He is refusing to pursue one the Government says does not exist. The prudential exhaustion doctrine does not require a detainee to seek relief from a tribunal that lacks authority to grant it, especially where the challenge goes to the Government's threshold classification of the detainee under an inapplicable statute.

177.    The same remedial principle appears throughout the recent EDNY and SDNY cases. In *Rodriguez-Acurio*, Judge Choudhury granted the writ, ordered release, and held that detention under the wrong statutory scheme cannot be sustained through later process. *Rodriguez-Acurio*, 2025 WL 3314420, at *23–24 . In *Hyppolite*, Judge Morrison ordered immediate release because the petitioner "did not receive the process he was plainly due under the Constitution and laws of the United States before he was deprived of his liberty." *Hyppolite*, slip op. at 4 . In *Artiga*, the court likewise ordered release rather than sending the petitioner into a later, substitute process. *Artiga*, 2025 WL 2829434 .

178.    The court in *Gopie v. Lyons* addressed exhaustion directly. It held that a bond hearing "is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance." It then concluded that the petitioner "is not required to exhaust a process that was deficient

41

from the outset." *Gopie v. Lyons*, No. 25-CV-05229 (SJB) (E.D.N.Y. Nov. 13, 2025) . That reasoning applies here. If there was no valid initial custody determination, later review cannot cure the violation.

179.    The Southern District cases say the same. In *Huamani*, Judge Liman held that where "Respondents do not argue that Petitioner was afforded any sort of process before her re-detention," the petitioner "is therefore entitled to release." *Huamani*, 2025 WL 3079014, at *8–9 . In *Kelly*, Judge Torres explained that custody hearings "are provided for the purpose of custody re-determination" and "are no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with," detention. *Kelly*, 2025 WL 2381591, at *4 . And in *Lopez Benitez*, Judge Ho held that where there is no valid "initial decision" to detain, a bond hearing cannot provide a meaningful remedy. 795 F. Supp. 3d at 490–91 .

180.    These cases do not establish a broad rule that bond hearings are always inadequate. They establish the narrower rule Petitioner needs here. When detention is unlawful from the start because DHS invoked the wrong statute and denied the procedures that would have attached under the correct one, a later bond hearing cannot cure the violation.

181.    Requiring exhaustion here would only prolong an ongoing deprivation of liberty. The Supreme Court has recognized that freedom from physical restraint lies at the core of due process and that habeas exists to test unlawful executive detention. *Zadvydas*, 533 U.S. at 690–91; *Jennings*, 583 U.S. at 296–97. If the agency says no bond jurisdiction exists, and the district cases repeatedly hold that immediate release is the proper remedy where detention was unlawful from inception, insisting on exhaustion would do nothing except delay relief.

182.    Nor can the Government rely on BIA review. The Board is bound by *Matter of Yajure-Hurtado* unless the Attorney General or a federal court says otherwise. See 8 C.F.R. § 1003.1(g), (h). So requiring exhaustion would force Petitioner to present his no-bond claim to the very body whose precedent created the bar.

183.    Finally, exhaustion is independently excused because Petitioner raises constitutional claims that the agency cannot finally resolve. He alleges detention under an inapplicable statute and without the

42

process required by § 1226(a) and the Fifth Amendment. The agency cannot supply the habeas remedy of release for detention unlawful from the start under the theory Petitioner advances. That is why the district courts, not the immigration courts, have supplied the operative relief in this line of cases.

184.    For all of those reasons, exhaustion is excused. Where DHS invokes § 1225(b) and *Matter of Yajure-Hurtado* to deny bond jurisdiction, there is no meaningful administrative remedy to exhaust, and remand for bond is not meaningful habeas relief where detention was unlawful from inception. The Court should reject any exhaustion defense and order Petitioner's immediate release.

**CLAIM FIVE**

**FAILURE TO FOLLOW MANDATORY DETENTION REGULATIONS AND PROCEDURES RENDERS CUSTODY UNLAWFUL UNDER ACCARDI**

185.    Under *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), an agency must follow its own binding regulations, especially where those regulations protect liberty or other important individual rights. When the Government fails to follow those mandatory procedures, its action is unlawful and cannot support continued detention. *Id.* at 267–68.

186.    The immigration detention scheme contains mandatory procedural safeguards governing arrest, processing, and custody determinations. These include 8 U.S.C. §§ 1226 and 1357 and regulations such as 8 C.F.R. §§ 236.1 and 287.3. Where ICE does not follow those procedures, particularly in the immediate aftermath of a warrantless arrest, detention is unlawful from the start and cannot be saved by post hoc rationalizations.

187.    The Second Circuit has enforced *Accardi* in the immigration context for decades. In *Montilla v. INS*, the court held that agency failure to follow its own regulations requires invalidation of the resulting action where those regulations protect fundamental rights. 926 F.2d 162, 166–69 (2d Cir. 1991). That principle applies here. The regulations governing arrest and detention are not optional internal housekeeping rules. They are part of the legal framework that protects liberty.

188.    The recent district cases apply that same idea in the custody setting. In *Lopez Benitez*, Judge Ho held that "before the Government may exercise such discretion to detain a person," § 1226(a) and 8

C.F.R. § 1236.1(c)(8) "require ICE officials to make an individualized custody determination." 795 F. Supp. 3d at 490 . In *Kelly*, Judge Torres held that ICE had to permit the detainee to demonstrate that release would not pose danger or flight risk, and found it undisputed that Kelly was not allowed to do so. *Kelly*, 2025 WL 2381591, at *3–4 . In *Huamani*, Judge Liman granted release where there was no process before re-detention. *Huamani*, 2025 WL 3079014, at *8–9 . In *Gopie*, Judge Bulsara held that the custody determination was made after arrest, not before or contemporaneously, and that this violated basic due process requirements. *Gopie*, No. 25-CV-05229 (SJB) (E.D.N.Y. Nov. 13, 2025) .

189.    These cases show the same thing. The regulations require timely, individualized custody determinations grounded in lawful authority. Failure to comply with those rules makes detention procedurally defective and constitutionally suspect.

### The Regulations Require Process at the Time of Arrest, Not Later

190.    Under 8 C.F.R. § 287.3(c), a person arrested without warrant must be examined without unnecessary delay and advised of the reasons for arrest and the right to counsel. Under 8 C.F.R. § 236.1(c), a custody determination must then be made as to detention or release. These are not loose suggestions. They are mandatory procedural safeguards governing the deprivation of liberty.

191.    That is why post hoc explanations do not work. DHS cannot ignore its own rules at the time of arrest and then attempt to cure the violation later through a later memorandum, later form, later warrant, or later bond proceeding. Under *Accardi*, the agency must follow the procedures it prescribed when it acts.

192.    This point has special force in a case involving 8 U.S.C. § 1357(a)(2). That section gives officers a narrow power to arrest without warrant only when they have reason to believe the person is removable and likely to escape before a warrant can be obtained. If officers make a warrantless arrest and then fail to follow the regulations that govern immediate processing and custody decisions, the statutory and regulatory prerequisites for detention were never satisfied.

### Application Here

44

193.    Here, Respondents failed to comply with the mandatory procedures governing Petitioner's arrest and custody determination. Petitioner was subjected to a warrantless arrest without compliance with 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.3. No contemporaneous custody determination was made consistent with 8 C.F.R. § 236.1. No lawful process was provided at or before the deprivation of liberty.

194.    These are not technical errors. They go to the heart of DHS's claimed authority to detain. The regulations exist to make sure detention decisions are made lawfully, deliberately, and with minimum safeguards. When those safeguards are ignored, detention is unlawful under *Accardi* and cannot stand.

195.    Nor can Respondents cure these violations after the fact. A later-issued document, a delayed custody decision, or a new litigation theory cannot retroactively validate an arrest and detention that were unlawful when they occurred. The law requires compliance at the time of deprivation, not reconstruction later.

196.    Accordingly, because Respondents failed to follow the mandatory procedures governing arrest and custody determinations, Petitioner's detention is unlawful under *Accardi*, violates the governing statutes and regulations, and violates the Due Process Clause. Where ICE fails to comply with its own binding rules governing arrest and detention, custody cannot stand. Habeas relief is required.

### <u>CLAIM FOUR:</u>

**IF RESPONDENTS CANNOT PRODUCE THE ADMINISTRATIVE RECORD DEMONSTRATING LAWFUL AUTHORITY FOR PETITIONER'S ARREST AND DETENTION, THE COURT MUST GRANT THE WRIT.**

**<u>Petitioner Requests an Order Directing Expedited Production of DHS Custody and Administrative Records</u>**

197.    Respondents cannot justify Petitioner's continued dention without producing the administrative record that purportedly authorizes his arrest and incarceration. In habeas corpus proceedings, *the Government bears the burden of demonstrating the legal authority for a person's detention*. The writ of habeas corpus exists precisely to assess whether the Executive Branch possesses lawful authority to restrain an individual's liberty. Where the Government cannot demonstrate that authority with competent evidence, the detention cannot stand.

198.    If Respondents cannot produce the administrative record demonstrating lawful authority for

Petitioner's arrest and detention, the Court must grant the writ. At a minimum, Respondents should be ordered to produce the complete administrative record—including the A-file, any alleged removal order, any reinstatement determination, and any custody determination—so that the Court may determine whether the detention complies with federal law and the Constitution. Absent such a showing, Petitioner's continued detention is unlawful and he must be released.

199.    Although habeas proceedings do not authorize plenary civil discovery, they do require <u>a *real return grounded in the actual record—not a curated narrative constructed by the detaining authority*</u>. The governing statutes make that obligation explicit. Under 28 U.S.C. § 2243, the writ "shall be returned within three days unless for good cause additional time is allowed," and the respondent must certify "the true cause of the detention." 28 U.S.C. § 2243 (emphasis added). Section 2241(c)(3) authorizes relief where a person is "in custody in violation of the Constitution or laws … of the United States," and § 2243 further commands that the Court "summarily hear and determine the facts" and "dispose of the matter as law and justice require."

200.    These statutory commands presuppose production of the *actual custody record*. A declaration that paraphrases ICE paperwork while withholding the underlying documents is not a return stating the "true cause" of detention within the meaning of § 2243. Habeas review cannot proceed on summaries, characterizations, or post hoc justifications; it requires the record itself so that the Court—not the Government—can determine the legality of detention.

201.    That principle is longstanding. The Supreme Court has made clear that the Government may not defeat habeas review through conclusory assertions. In *Walker v. Johnston*, 312 U.S. 275, 284–87 (1941), the Court rejected reliance on unsupported official representations and held that courts must examine the underlying facts where detention is challenged. Habeas corpus "cuts through all forms and goes to the very tissue of the structure," requiring production of the factual basis for detention so the court may determine its legality. Id. at 284. That command applies with full force here.

202.    <u>Courts Require Production of The Underlying Detention File - Not Summaries</u>

203.    Consistent with §§ 2241 and 2243, courts have repeatedly required Respondents to produce the

46

actual documentary record of detention where its legality is challenged.

204.    In *Covelli-Chaparro v. Bondi*, No. 2:26-cv-00118 (E.D.N.Y. Jan. 13, 2026), the court ordered a supplemental submission and required Respondents to confirm that they had provided "all documents demonstrating why Petitioner's detention in ICE custody is lawful." That directive reflects the core requirement that habeas review must be grounded in the full evidentiary record, not selective disclosures.

205.    Similarly, in *Minarcaja Concha v. Lyons*, No. 2:25-cv-06695 (E.D.N.Y. Dec. 10, 2025), the court required Respondents to file a detailed supplemental submission addressing the timing, location, and conditions of detention, including records relating to confinement at 535 Federal Plaza—such as sleeping conditions, access to food, medical care, and counsel. The court did not accept generalized assertions; it required the underlying factual record.

206.    In *Hernández Lazo v. Noem*, No. 2:25-cv-06639 (E.D.N.Y. Dec. 10, 2025), the court ordered Respondents to produce specific documentary materials, including records related to the petitioner's immigration status (there, TPS termination documents), confirming that habeas courts may compel production of discrete records necessary to adjudicate the legality of detention.

207.    And in *Ulloa Montoya v. Bondi*, No. 2:25-cv-06363 (E.D.N.Y. Nov. 24, 2025), the court—while granting TRO relief—directed Respondents to produce *"all immigration forms and records referenced"* in the Government's own submission, recognizing that habeas review cannot proceed where the Government selectively cites documents but withholds them from the Court.

208.    Together, these cases establish a consistent rule: when detention is challenged, Respondents must produce the underlying file that purportedly justifies that detention.

209.    <u>The Required Return Includes the Full Arrest and Custody Record</u>

210.    To satisfy §§ 2241 and 2243, Respondents must file a complete and non-selective return that includes the full arrest and custody record, including but not limited to:

Form I-200 (warrant of arrest), if any;
Form I-213 (Record of Deportable/Inadmissible Alien);
Form I-286 (Notice of Custody Determination);
Forms I-220A or I-220B (release or supervision documents);

47

Any detainer, booking, or intake records;
Any custody classification or custody review determinations;
Any supervisory approvals, revocations, or policy-based directives;
Any documentation reflecting the statutory basis invoked for detention;
Any records reflecting when, how, and by whom the custody decision was made.

This is not discovery—it is the *minimum record necessary* for the Court to "determine the facts" as § 2243 requires.

### *Without The Record, The Court Cannot Discharge Its Statutory Duty*

211.     Absent production of the underlying file, the Court is left with nothing more than the Government's characterization of its own authority. That is precisely what habeas review forbids. Section 2243 requires the Court to determine the facts—not to accept the Government's account of them.

212.     Where, as here, the legality of the arrest, the existence (or absence) of a warrant, the timing of any custody determination, and the statutory basis for detention are all in dispute, the record itself is the case. Without it, meaningful judicial review is impossible.

213.     Courts have long recognized that when a party fails to produce evidence within its control that would naturally be expected to support its position, an adverse inference may be drawn that the evidence would not support that party's claims. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108–09 (2d Cir. 2002). That principle applies with particular force in habeas proceedings, where the Government alone possesses the detention record.

### **Expedited Document Production Is Required**

214.     Finally, the statute imposes a compressed timeline. Section 2243 requires a return within three days absent good cause. That timeline reflects Congress's judgment that unlawful detention must be addressed promptly—not after prolonged delay.

215.     Accordingly, the Court should order Respondents to:

a)  File a complete return within the timeframe required by § 2243;
b)  Produce the full, unredacted custody and arrest record described above; and
c)  Certify that the production includes all documents relied upon or referenced in support of detention.

48

Only with that record can the Court fulfill its statutory obligation to "summarily hear and determine the facts" and "dispose of the matter as law and justice require."

## CLAIM FIVE

### REQUEST FOR ATTORNEYS' FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT

216.    Petitioner respectfully requests that this Court expressly preserve Petitioner's right to seek an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C.§ 2412, should Petitioner prevail in this habeas corpus proceeding or obtain the relief requested herein through this Temporary Restraining Order or subsequent order of the Court.

217.    EAJA provides that a prevailing party in a civil action against the United States is entitled to an award of attorneys' fees and costs unless the government's position was substantially justified or special circumstances would make an award unjust. See 28 U.S.C. § 2412(d)(1)(A).Immigration habeas corpus proceedings constitute "civil actions" within the meaning of EAJA, and federal courts in this District have recognized that noncitizens who obtain relief from unlawful detention—including release, termination of custody, or injunctive relief—qualify as prevailing parties for purposes of EAJA where the government's conduct is not substantially justified.

218.    Here, Petitioner has been subjected to an unlawful seizure and detention without statutory authority and in violation of the Due Process Clause of the Fifth Amendment. The government's actions necessitated the immediate filing of this emergency habeas petition and application for a Temporary Restraining Order to prevent irreparable harm, including continued unlawful detention and the risk of transfer beyond this Court's jurisdiction.

219.    Under these circumstances, the government's position lacks substantial justification, and Petitioner should not bear the financial burden of vindicating fundamental constitutional rights. Accordingly, Petitioner respectfully requests that this Court's Temporary Restraining Order expressly provide that nothing in the Court's order shall be construed to waive or limit Petitioner's right to seek attorneys' fees and costs under EAJA, and that Petitioner may move for such fees upon prevailing in this action or obtaining the relief sought, including release from custody or other injunctive relief ordered by

the Court.

## **REQUEST FOR RELIEF**

Wherefore, Petitioner respectfully requests that this Court Order the Respondents to Show Cause

pursuant to 28 U.S.C. § 2243 why a Temporary Restraining Order should not remain in effect pending

swift adjudication of the habeas petition:

a) Prohibiting Respondents from transferring Petitioner outside this District absent further order of this Court

b) directing Respondents to provide reasonable and timely access to counsel, including meaningful and confidential in-person legal visitation;

c) directing Respondents to file, within forty-eight (48) hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243;requiring production, within forty-eight (48) hours of this Order, of all custodial and administrative documents supporting detention, as well as all DHS and ICE custody, detention, and administrative records, with appropriate relief for noncompliance;

d) producing Petitioner forthwith before this Court as necessary to effectuate meaningful habeas review; and upon adjudication of the Petition, granting  the writ of habeas corpus and ordering Petitioner's immediate release from unlawful detention;

e) awarding reasonable attorney's fees and costs pursuant to the Equal Access to JusticeAct, 28 U.S.C. § 2412(d), should Petitioner prevail in this action;

f) ordering that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where Respondents will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a), that Petitioner be "entitled to release from the unlawful restrictions on his liberty which means, in the circumstances here, restoration of... the status quo ante." *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention]... including the ankle monitor and reporting requirements") and "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections." *Id. See Ccorihuaman v. Genalo* No. 26-cv-554 (E.D.N.Y. Feb 6, 2026) and

g) ordering that Respondents shall return to Petitioner all personal property belonging to Petitioner that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by Respondents or by any contracted or affiliated facility, and that such property shall be returned in the same condition as it existed immediately prior to Petitioner's detention; and

h) Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

*s/ S. Michael Musa-Obregon*

S. Michael Musa-Obregon, Esq.

MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com

50

718-803-1000
March 28, 2026
New York, NY

51

**VERIFICATION BY SOMEONE ACTING ON THE PETITIONER'S
BEHALF PURSUANT TO 28 U.S.C.§ 2242**

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have received this information from law firm staff members, the office file, counsel's investigations, and the Petitioner, who has granted his lawyers permission to discuss the events described in this Petition with his family. On the basis of this understanding, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

| Dated: March 28, 2026 | BY: |
| | *S. Michael Musa-Obregon* |
| | S. Michael Musa-Obregon |

52

## CERTIFICATE OF SERVICE

I certify that on March 28, 2026, I caused the foregoing Petition, Emergency Motion, and Order to Show Cause to be served by electronic mail and certified mail by US POSTAL SERVICE on the United States Attorney's Office for the EASTERN DISTRICT OF NEW YORK, Civil Division, and by electronic mail and by certified mail US POSTAL SERVICE on counsel for Respondents, and I further caused service on Respondents in their official capacities via the U.S. Attorney as permitted by applicable rule.

*s/ S. Michael Musa-Obregon*

S. Michael Musa-Obregon, Esq.
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
 michael@musa-obregon.com
718-803-1000
New York, NY

53

## ADDENDUM

[1] See *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216, 216–18, 226–27 (B.I.A. 2025); *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (E.D.N.Y. Nov. 10, 2025) ; *Bethancourt Soto v. Soto*, No. 25-cv-16200 (D.N.J. Oct. 22, 2025) ; *Bond Hearings for Immigrants Cease Despite Federal Rulings*, Bloomberg Law.

[2] *Matter of Yajure-Hurtado*, 29 I. & N. Dec. at 216, 226–27.

[3] American Immigration Council & The Legal Aid Society, *Practice Advisory Update: Detention under INA § 235(b): Matter of Yajure Hurtado* (Sept. 10, 2025).

[4] *Rodriguez-Acurio*, No. 2:25-cv-6065, slip op. at 2–4, 26–29 ; *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *3–4, *8 (D.N.J. Sept. 26, 2025) ; *Contreras Maldonado v. Cabezas*, No. 25-13004 (D.N.J. Oct. 23, 2025) .

[5] *Bond Hearings for Immigrants Cease Despite Federal Rulings*, Bloomberg Law ("The Trump administration's immigration courts have largely stopped conducting bond hearings, despite three federal judges' explicit declarations that noncitizen detainees have the right to argue for their release.").

[6] AILA, *Practice Alert: EOIR Issues Nationwide Guidance on Maldonado Bautista* (reproducing Jan. 13, 2026 guidance from Chief Immigration Judge Teresa Riley).

[7] Nate Raymond, *Top US Immigration Judge Says Bond Hearings Should Be Denied Despite Court Rulings, Documents Show*, Reuters (Jan. 16, 2026).

[8] *Rodriguez-Acurio*, No. 2:25-cv-6065, slip op. .

[9] *Bethancourt Soto*, No. 25-cv-16200 ; .

[10] *Contreras Maldonado*, No. 25-13004 ; .

[11] *Maldonado Bautista v. Santacruz*, Final Judgment, Dec. 18, 2025.

[12] *Maldonado Bautista v. Santacruz*, Order Granting in Part Motion to Reconsider, Dec. 18, 2025.

[13] *Id.*

[14] *Maldonado Bautista v. Santacruz*, Order Granting Motion to Enforce and Vacating *Yajure Hurtado*, Feb. 18, 2026.

[15] *Id.*

[16] *Id.*

[17] Chief Immigration Judge Teresa L. Riley, Nationwide Guidance on *Maldonado Bautista* (Jan. 13, 2026), reproduced in AILA practice materials.

[18] Nate Raymond, *Top US Immigration Judge Says Bond Hearings Should Be Denied Despite Court Rulings, Documents Show*, Reuters (Jan. 16, 2026).

[19] *Bond Hearings for Immigrants Cease Despite Federal Rulings*, Bloomberg Law.

54

[20] *J.S. v. Wofford*, No. 1:25-cv-02016, Findings and Recommendations (E.D. Cal. Jan. 16, 2026).

[21] *Maldonado Bautista* Practice Advisory Update (Feb. 11, 2026).

[22] TRAC Immigration data update reporting FY 2025 bond-hearing totals through March 2025.

[23] American Immigration Council analysis describing the effects of the no-bond policy and stating that release on bond was "no longer an option for many people."

[24] Letter from members of the U.S. Senate Judiciary Committee to the Department of Justice (Mar. 28, 2025).

[25] Public reporting on firings or non-retention of immigration judges and assistant chief immigration judges during 2025.

Appendix A

Martinez v. Hyde, No. 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); Bautista v. Santacruz, No. 25-cv-01873, 2025 WL 2670875 (C.D. Cal. July 28, 2025); Gonzalez v. Noem, No. 25-cv-02054, 2025 WL 2633187 (C.D. Cal. Aug. 13, 2025); Lopez Benitez v. Francis, No. 25 Civ. 5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Dos Santos v. Noem, No. 25-cv-12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); Arrazola-Gonzalez v. Noem, No. 25-cv-01789, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Maldonado v. Olson, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Romero v. Hyde, No. 25-11631, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); Samb v. Joyce, No. 25 Civ. 6373, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); Ramirez Clavijo v. Kaiser, No. 25-cv-06248, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); Quinonez Mercado v. Dep't Homeland Sec., No. 25-cv-12066, 2025 WL 2430423 (D. Mass. Aug. 22, 2025); Leal-Hernandez v. Noem, No. 25-cv-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Kostak v. Trump, No. 25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); Diaz Diaz v. Mattivelo, No. 25-cv-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025); Lopez-Campos v. Raycraft, No. 25-cv12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Francisco T. v. Bondi, No. 25-CV-03219, 2025 WL 2629839 (D. Minn. Aug. 29, 2025); Chogllo Chafla v. Scott, No. 25-cv-00437, 2025 WL 2531027 (D. Me. Sept. 2, 2025); Salvador v. Bondi, No. 25-cv-07946, 2025 WL 2995055 (C.D. Cal. Sept. 2, 2025); Hernandez Nieves v. Kaiser, No. 25-cv-06921, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); Garcia v. Noem, No. 25-cv02180, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Doe v. Moniz, No. 25-cv-12094, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); Mosqueda v. Noem, No. 25-cv-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); Jimenez v. FCI Berlin, Warden, No. 25-cv-326, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); Guzman v. Andrews, No. 25-cv-01015, 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025); Sampiao v. Hyde, No. 25-cv11981, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); Pizzaro Reyes v. Raycraft, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); Hernandez Marcelo v. Trump, No. 25-cv-00094, 2025 WL 2741230 (S.D. Iowa Sept. 10, 2025); Lopez Santos v. Noem, No. 25-CV-01193, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); Salcedo Aceros v. Kaiser, No. 25-cv-06924, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); Munoz Materano v. Arteta, No. 25 Civ. 6137, 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025); Pablo Sequen v. Kaiser, No. 25-cv-06487, 2025 WL 2650637 (N.D. Cal. Sept. 16, 2025); Garcia Cortes v. Noem, No. 25-cv02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); Vazquez v. Feeley, No. 25-cv-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Salazar v. Dedos, No. 25-cv-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); Oliveros v. Kaiser, No. 25-cv-07117, 2025 WL 2677125 (N.D. Cal. Sept. 18, 2025); Castellanos v. Kaiser, No. 25-cv-07962, 2025 WL 2689853 (N.D. Cal. Sept. 18, 2025); Barrera v. Tindall, No. 25-cv541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); Chiliquinga Yumbillo v. Stamper, No. 25-cv-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); Hasan v. Crawford, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); Singh v. Lewis, No. 25-cv-96, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); Chogllo Chafla v. Scott, No. 25-cv-00437, 2025 WL 2688541 (D. Me. Sept. 22, 2025); Lepe v. Andrews, No. 25-cv01163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Giron Reyes v. Lyons, No. C25-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); Barrajas v. Noem, No. 25-cv-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025); Roman v. Noem, No. 25-cv-01684, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Roa v. Albarran, No. 25-cv-07802, 2025 WL 2732923 (N.D. Cal. Sept. 25, 2025); Lopez v. Hardin, No. 25-cv-830, 2025 WL 2732717 (M.D. Fla. Sept. 25, 2025); Valencia Zapata v. Kaiser, No. 25-cv-07492, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); Zumba v. Bondi, No. 25-cv-14626, 2025 WL 2753496  (D.N.J. Sept. 26, 2025);

37

Inlago Tocagon v. Moniz, No. 25-cv-12453, 2025 WL 2778023 (D. Mass. Sept. 29, 2025); Romero-Nolasco v. McDonald, No. 25-cv-12492, 2025 WL 2778036 (D. Mass. Sept. 29, 2025); Chang Barrios v. Shepley, No. 25-cv-00406, 2025 WL 2772579 (D. Me. Sept. 29, 2025); J.U. v. Maldonado, No. 25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); Quispe v. Crawford, No. 25-cv-1471, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); Flores v. Noem, No. 25-cv-02490, 2025 WL 3050062 (C.D. Cal. Sept. 29, 2025); Helbrum v. Williams, No. 25-cv-00349, 2025 WL 2840273 (S.D. Iowa Sept. 30, 2025); Chiliquinga Yumbillo v. Stamper, No. 25-cv-00479, 2025 WL 2783642 (D. Me. Sept. 30, 2025); Quispe Ardiles v. Noem, No. 25-cv-01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); Rodriguez v. Bostock, No. 25-cv-05240, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); Belsai D.S. v. Bondi, No. 25-cv-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); Rocha v. Hyde, No. 25-CV-12584, 2025 WL 2807692 (D. Mass. Oct. 2, 2025); Chanaguano Caiza v. Scott, No. 25-cv-00500, 2025 WL 2806416 (D. Me. Oct. 2, 2025); Casun v. Hyde, No. 25-cv-427, 2025 WL 2806769 (D.R.I. Oct. 2, 2025); Guzman Alfaro v. Wamsley, No. 25-cv01706, 2025 WL 2822113 (W.D. Wash. Oct. 2, 2025); Echevarria v. Bondi, No. CV-25-03252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); Pelico v. Kaiser, No. 25-cv-07286, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); Patel v. Tindall, No. 25-cv-373, 2025 WL 2823607 (W.D. Ky. Oct. 3, 2025); Guerrero Orellana v. Moniz, No. 25-cv-12664, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); Elias Escobar v. Hyde, No. 25-cv12620, 2025 WL 2823324 (D. Mass. Oct. 3, 2025); Pop v. Noem, No. 25-cv-02589, 2025 WL 3050095 (C.D. Cal. Oct. 3, 2025); Artiga v. Genalo, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); Hyppolite v. Noem, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); Cumes v. Moniz, No. 25cv-12514, 2025 WL 3197637 (D. Mass. Oct. 6, 2025); S.D.B.B. v. Johnson, No. 25-cv-882, 2025 WL 2845170 (M.D.N.C. Oct. 7, 2025); Buenrostro-Mendez v. Bondi, No. H-25-3726, 2025 WL 2886346 (S.D. Tex. Oct. 7, 2025); Ledesma Gonzalez v. Bostock, No. 25-cv-01404, 2025 WL 2841574 (W.D. Wash. Oct. 7, 2025); B.D.V.S. v. Forestal, No. 25-cv-01968, 2025 WL 2855743 (S.D. Ind. Oct. 8, 2025); A.A. v. Olson, No. 25-3381, 2025 WL 2886729 (D. Minn. Oct. 8, 2025); Covarrubias v. Vergara, No. 25-CV-112, 2025 WL 2950097 (S.D. Tex. Oct. 8, 2025); Ortiz Donis v. Chestnut, No. 25-CV-01228, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); Chavez v. Kaiser, No. 25-cv-06984, 2025 WL 2909526 (N.D. Cal. Oct. 9, 2025); Ballestros v. Noem, No. 25-cv-594, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025); Rico-Tapia v. Smith, No. 25-00379, 2025 WL 2950089 (D. Haw. Oct. 10, 2025); Carlos v. Noem, No. 25-cv-01900, 2025 WL 2896156 (D. Nev. Oct. 10, 2025);

Castillo v. Lyons, No. 25-cv-16219, 2025 WL 2940990 (D.N.J. Oct. 10, 2025); Ortiz Martinez v. Wamsley, No. 25-cv-01822, 2025 WL 2899116 (W.D. Wash. Oct. 10, 2025); Alejandro v. Olson, No. 25-cv-02027, 2025 WL 2896348 (S.D. Ind. Oct. 11, 2025); E.C. v. Noem, No. 25-cv01789, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Singh v. Lyons, No. 25-cv-01606, 2025 WL 2932635 (E.D. Va. Oct. 14, 2025); Merino v. Ripa, No. 25-23845, 2025 WL 2941609 (S.D. Fla. Oct. 15, 2025); Teyim v. Perry, No. 25-cv-01615, 2025 WL 2950183 (E.D. Va. Oct. 15, 2025); Mejia v. Woosley, No. 25-cv-82, 2025 WL 2933852 (W.D. Ky. Oct. 15, 2025); Pablo Sequen v. Albarran, No. 25-cv-06487, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025); Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr., No. 25-2453, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025); J.S.H.M v. Wofford, No. 25-CV-01309, 2025 WL 2938808 (E.D. Cal. Oct. 16, 2025); Piña v. Stamper, No. 25-cv-00509, 2025 WL 2939298 (D. Me. Oct. 16, 2025); Ochoa Ochoa v. Noem, No. 25 CV 10865, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025); Hernandez Hernandez v. Crawford, No. 25-cv-01565, 2025 WL 2940702 (E.D. Va. Oct. 16, 2025); Contreras-Cervantes v. Raycraft, No. 25-cv-13073, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025); Sanchez Alvarez v. Noem, No. 25-cv-1090, 2025 WL 2942648 (W.D. Mich. Oct. 17, 2025); Sabi Polo v. Chestnut, No. 25-CV-01342, 2025 WL 2959346 (E.D. Cal. Oct. 17, 2025); Zamora v. Noem, No. 25-12750, 2025 WL 2958879 (D. Mass. Oct. 17, 2025); Menjivar Sanchez v. Wofford, No. 25-cv-01187,

38

2025 WL 2959274 (E.D. Cal. Oct. 17, 2025); Gutierrez v. Baltasar, No. 25-CV-2720, 2025 WL 2962908 (D. Colo. Oct. 17, 2025); Benitez-Cornejo v. Cantu, No. CV-25-03672, 2025 WL 2992211 (D. Ariz. Oct. 17, 2025); Sandoval v. Raycraft, No. 25-cv12987, 2025 WL 2977517 (E.D. Mich. Oct. 17, 2025); Pacheco Mayen v. Raycraft, No. 25-cv-13056, 2025 WL 2978529 (E.D. Mich. Oct. 17, 2025); Zecua v. Lyons, No. 25-cv-09794, 2025 WL 3150680 (C.D. Cal. Oct. 17, 2025); H.G.V.U. v. Smith, No. 25 CV 10931, 2025 WL 2962610 (N.D. Ill. Oct. 20, 2025); De La Cruz v. Noem, No. C25-150, 2025 WL 3110876 (N.D. Iowa Oct. 20, 2025); Da Silva v. Bondi, No. 25-cv12672, 2025 WL 2969163 (D. Mass. Oct. 21, 2025); Maldonado v. Baker, No. 25-3084, 2025 WL 2968042 (D. Md. Oct. 21, 2025); Miguel v. Noem, No. 25 C 11137, 2025 WL 2976480 (N.D. Ill. Oct. 21, 2025); Casio-Mejia v. Raycraft, No. 25-cv-13032, 2025 WL 2976737 (E.D. Mich. Oct. 21, 2025); Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 WL 2976739 (E.D. Mich. Oct. 21, 2025); Santos Franco v. Raycraft, 37 No. 25-cv-13188, 2025 WL 2977118 (E.D. Mich. Oct. 21, 2025); Avila v. Bondi, No. 25-3741, 2025 WL 2976539 (D. Minn. Oct. 21, 2025); Buestan v. Chu, No. 25-16034, 2025 WL 2972252 (D.N.J. Oct. 21, 2025); Pineda v. Simon, No. 25-cv-01616, 2025 WL 2980729 (E.D. Va. Oct. 21, 2025); Garcia v. Wamsley, No. 25-cv-01980, 2025 WL 3208777 (W.D. Wash. Oct. 21, 2025); Bethancourt Soto v. Soto, No. 25-cv16200, 2025 WL 2976572 (D.N.J. Oct. 22, 2025); Garcia v. Noem, No. 25-cv-02771, 2025 WL 2986672 (C.D. Cal. Oct. 22, 2025); Loa Caballero v. Baltazar, No. 25-cv-03120, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); Padilla v. Noem, No. 25 CV 12462, 2025 WL 2977742 (N.D. Ill. Oct. 22, 2025); Martinez v. Trump, No. 25-1445, 2025 WL 3124847 (W.D. La. Oct. 22, 2025); Lomeu v. Soto, No. 25cv16589, 2025 WL 2981296 (D.N.J. Oct. 23, 2025); Maldonado v. Cabezas, No. 25-13004, 2025 WL 2985256 (D.N.J. Oct. 23, 2025); Del Cid v. Bondi, No. 25-cv-00304, 2025 WL 2985150 (W.D. Pa. Oct. 23, 2025); Esquivel-Ipina v. Larose, No. 25-CV-2672, 2025 WL 2998361 (S.D. Cal. Oct. 24, 2025); Hernandez v. Baltazar, No. 25-cv03094, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); Patel v. Crowley, No. 25 C 11180, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025); Aguilar Guerra v. Joyce, No. 25-cv-00534, 2025 WL 2999042 (D. Me. Oct. 24, 2025); Carmona v. Noem, No. 25-cv-1131, 2025 WL 2992222 (W.D. Mich. Oct. 24, 2025); Lapop v. Noem, No. 25-cv-016666, 2025 WL 2997507 (E.D. Va. Oct. 24, 2025); Helal v. Janecka, No. 25-cv-02650, 2025 WL 3190132 (C.D. Cal. Oct. 24, 2025); Arias Lopez v. Hyde, No. 25-12680, 2025 WL 3197806 (D. Mass. Oct. 24, 2025); J.A.C.P. v. Wofford, No. 25-cv-01354, 2025 WL 3013328 (E.D. Cal. Oct. 27, 2025); Lopez v. Warden, Otay Mesa Detention Ctr., No. 25-cv-2527, 2025 WL 3005346 (S.D. Cal. Oct. 27, 2025); Sanchez v. Olson, No. 25 CV 12453, 2025 WL 3004580 (N.D. Ill. Oct. 27, 2025); Garcia Picazo v. Sheehan, No. C25-4057, 2025 WL 3006188 (N.D. Iowa Oct. 27, 2025); Martinez-Elvir v. Olson, No. 25-CV-589, 2025 WL 3006772 (W.D. Ky. Oct. 27, 2025); Pineda Velasquez v. Noem, No. 25-3215, 2025 WL 3003684 (D. Md. Oct. 27, 2025); Gimenez Gonzalez v. Raycraft, No. 25-cv-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025); Tomas Elias v. Hyde, No. 25-cv-540, 2025 WL 3004437 (D.R.I. Oct. 27, 2025); Duarte Escobar v. Perry, No. 25cv758, 2025 WL 3006742 (E.D. Va. Oct. 27, 2025); Puerto-Hernandez v. Lynch, No. 25-cv1097, 2025 WL 3012033 (W.D. Mich. Oct. 28, 2025); Patel v. Almodovar, No. 25-15345, 2025 WL 3012323 (D.N.J. Oct. 28, 2025); J.G.O. v. Francis, No. 25-CV-7233, 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025); Lopez v. Hardin, No. 25-cv-830, 2025 WL 3022245 (M.D. Fla. Oct. 29, 2025); Corona Diaz v. Olson, No. 25 CV 12141, 2025 WL 3022170 (N.D. Ill. Oct. 29, 2025); Garcia v. Noem, No. 25-cv-1271, 2025 WL 3017200 (W.D. Mich. Oct. 29, 2025); Rodriguez v. Noem, No. 25-cv-1196, 2025 WL 3022212 (W.D. Mich. Oct. 29, 2025); Ramirez Valverde v. Olson, No. 25-CV-1502, 2025 WL 3022700 (E.D. Wis. Oct. 29, 2025); Oliva v. Noem, No. 25-cv-1592, 2025 WL 3145712 (E.D. Va. Oct. 29, 2025); Martinez Lopez v. Larose, No. 25-cv-2717, 2025 WL 3030457 (S.D. Cal. Oct. 30, 2025); Singh v. Bondi, No. 25-cv-02101, 2025 WL 3029524 (S.D. Ind. Oct. 30, 2025); Ayala Amaya v. Bondi, No. 25-cv-16428, 2025 WL 3033880

(D.N.J. Oct. 30, 2025); L.A.E. v. Wamsley, No. 25-cv-01975, 2025 WL 3037856 (D. Ore. Oct. 30, 2025); Astudillo v. Hyde, No. 25-551, 2025 WL 3035083 (D.R.I. Oct. 30, 2025); Lopez v. Sheehan, No. 25-CV-4052, 2025 WL 3046183 (N.D. Iowa Oct. 30, 2025); Escobar-Ruiz v. Raycraft, No. 25-cv-1232, 2025 WL 3039255 (W.D. Mich. Oct. 31, 2025); De Jesus Ramirez v. Noem, No. 25-cv-1261, 2025 WL 3039266 (W.D. Mich. Oct. 31, 2025); Ruiz Yarleque v. Noem, No. 25-cv-02836, 2025 WL 3043936 (C.D. Cal. Oct. 31, 2025); Arauz v. Baltazar, No. 25-cv-03260, 2025 WL 3041840 (D. Colo. Oct. 31, 2025); Valencia v. Noem, No. 25-cv12829, 2025 WL 3042520 (N.D. Ill. Oct. 31, 2025); Ponce v. Olson, No. 25-cv-13037, 2025 WL 3049785 (N.D. Ill. Oct. 31, 2025); Mejia v. Noem, No. 25-cv-1227, 2025 WL 3041827 (W.D. Mich. Oct. 31, 2025); Godinez-Lopez v. Ladwig, No. 25-cv-02962, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025); M.M. v. Wamsley, No. 25-cv-02074, 2025 WL 3053023 (W.D. Wash. Oct. 31, 2025); Garcia v. Noem, No. 25-cv00879, 2025 WL 3041895 (M.D. Fla. Oct. 31, 2025); J.A.M. v. Streeval, No. 25-cv-342, 2025 WL 3050094 (M.D. Ga. Nov. 1, 2025); Flores v. Olson, No. 25 C 12916, 2025 WL 3063540 (N.D. Ill. Nov. 3, 2025); D.E.C.T. v. Noem, No. 25 C 12463, 2025 WL 3063650 (N.D. Ill. Nov. 3, 2025); Mboup v. Field Off. Dir. of N.J. Immigr. and Customs Enf't, No. 25-cv-16882, 2025 WL 3062791 (D.N.J. Nov. 3, 2025); Ramos v. Rokosky, No. 25cv15892, 2025 WL 3063588 (D.N.J. Nov. 3, 2025); Gonzalez v. Sterling, No. 25-CV-6080, 2025 WL 3145764 (N.D. Ga. Nov. 3, 2025); F.M.V. v. Wofford, No. 25-cv-01381, 2025 WL 3083934 (E.D. Cal. Nov. 4, 2025); Beltran v. Noem, No. 25cv2650, 2025 WL 3078837 (S.D. Cal. Nov. 4, 2025); Alonso v. Tindall, No. 25-cv-652, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025); Mendoza v. Noem, No. 25-cv-1252, 2025 WL 3077589 (W.D. Mich. Nov. 4, 2025); Tumba Huamani v. Francis, No. 25-cv-8110, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025); Alvarez Ortiz v. Freden, No. 25-CV-960, 2025 WL 3085032 (W.D.N.Y. Nov. 4, 2025); R.E. v. Bondi, No. 25-CV-3946, 2025 WL 3146312 (D. Minn. Nov. 4, 2025); Arizmendi v. Noem, No. 25 C 13041, 2025 WL

3089107 (N.D. Ill. Nov. 5, 2025); Hernandez Capote v. Sec'y of U.S. Dep't of Homeland Sec., No. 25-13128, 2025 WL 3089756 (E.D. Mich. Nov. 5, 2025); Lopez v. Noem, No. 25-16890, 2025 WL 3101889 (D.N.J. Nov. 5, 2025); Sarmiento v. Perry, No. 25-cv-01644, 2025 WL 3091140 (E.D. Va. Nov. 5, 2025); Rojas Vargas v. Bondi, No. 25-cv-01699, 2025 WL 3251728 (W.D. Tex. Nov. 5, 2025); Mirzoev v. Olson, No. 25-cv-12969, 2025 WL 3101969 (N.D. Ill. Nov. 6, 2025); Pacheco Carrillo v. Noem, No. 25 C 12963, 2025 WL 3101993 (N.D. Ill. Nov. 6, 2025); Hernandez-Luna v. Noem, No. 25-cv-01818, 2025 WL 3102039 (D. Nev. Nov. 6, 2025); Vicens-Marquez v. Soto, No. 25-16906, 2025 WL 3097496 (D.N.J. Nov. 6, 2025); Romero Perez v. Francis, No. 25-cv-8112, 2025 WL 3110459 (S.D.N.Y. Nov. 6, 2025); Garcia v. Noem, No. 25-cv-1712, 2025 WL 3111223 (E.D. Va. Nov. 6, 2025); Vasquez Carcamo v. Noem, No. 25-cv-00922, 2025 WL 3119263 (M.D. Fla. Nov. 7, 2025);

Arredondo v. Olson, No. 25-cv-12882, 2025 WL 3124149 (N.D. Ill. Nov. 7, 2025); Rios v. Noem, No. 25-cv-13180, 2025 WL 3124173 (N.D. Ill. Nov. 7, 2025); Morales-Martinez v. Raycraft, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025); Garcia v. Raycraft, No. 25-cv-1281, 2025 WL 3122800 (W.D. Mich. Nov. 7, 2025); Serrano v. Noem, No. 25-cv-1320, 2025 WL 3122825 (W.D. Mich. Nov. 7, 2025); Mendez v. Noem, No. 25-cv-02062, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cantero Garcia v. Wamsley, No. 25-cv-02092, 2025 WL 3123996 (W.D. Wash. Nov. 7, 2025); Cruz-Gamez v. Bondi, No. 25-cv-02154, 2025 WL 3130820 (W.D. Wash. Nov. 7, 2025); O.P.A.M. v. Wofford, No. 25-cv-01423, 2025 WL 3120552 (E.D. Cal. Nov. 7, 2025); Munoz v. Noem, No. 25-CV-1753, 2025 WL 3218241 (W.D. Tex. Nov. 7, 2025); Guartazaca Sumba v. Crowley, No. 25-CV-13034, 2025 WL 3126512 (N.D. Ill. Nov. 9, 2025); Perez v. Noem, No. 25 C 13442, 2025 WL 3140692 (N.D. Ill. Nov. 10, 2025); Pere-Gomez v. Warden, Camp E. Mont. Det. Facility, No. 25cv773, 2025 WL 3141103 (E.D. Va. Nov. 10, 2025); Otilio B.F. v. Andrews, No. 25-cv-01398, 2025 WL 3152480 (E.D. Cal. Nov. 11, 2025); Martinez v. Noem, No. 25-cv-12029, 2025 WL 3145103 (N.D. Ill. Nov. 11, 2025); Lopez Briseno v. Noem, No. 25 C

40

12092, 2025 WL 3145985 (N.D. Ill. Nov. 11, 2025); Sharan S. v. Chestnut, No. 25-cv-01427, 2025 WL 3167826 (E.D. Cal. Nov. 12, 2025); Aquino v. LaRose, No. 25cv-2904, 2025 WL 3158676 (S.D. Cal. Nov. 12, 2025); Guevara v. Swearingen, No. 25 C 12549, 2025 WL 3158151 (N.D. Ill. Nov. 12, 2025); Vasquez Gonzalez v. Olson, No. 25 C 13162, 2025 WL 3158191 (N.D. Ill. Nov. 12, 2025); Diego v. Raycraft, No. 25-13288, 2025 WL 3159106 (E.D. Mich. Nov. 12, 2025); Alvarez v. Noem, No. 25-cv-1313, 2025 WL 3151948 (W.D. Mich. Nov. 12, 2025); Lucero v. Noem, No. 25cv-1295, 2025 WL 3165235 (W.D. Mich. Nov. 12, 2025); E.M. v. Noem, No. 25-cv-3975, 2025 WL 3157839 (D. Minn. Nov. 12, 2025); Guaman Naula v. Noem, No. 25-16792, 2025 WL 3158490 (D.N.J. Nov. 12, 2025); J.Y.L.C. v. Bostock, No. 25-cv-02083, 2025 WL 3169865 (D. Ore. Nov. 12, 2025); Quinapanta v. Bondi, No. 25-cv-795, 2025 WL 3157867 (W.D. Wis. Nov. 12, 2025); Marin v. Andrews, No. 25-cv01422, 2025 WL 3171484 (E.D. Cal. Nov. 13, 2025); Calel v. LaRose, No. 25-cv-02883, 2025 WL 3171898 (S.D. Cal. Nov. 13, 2025); Cabrera v. Noem, No. 25 C 12160, 2025 WL 3171288 (N.D. Ill. Nov. 13, 2025); Serrano v. Salazar, No. 25 C 13170, 2025 WL 3171354 (N.D. Ill. Nov. 13, 2025); Delgado Avila v. Crowley, No. 25-cv-00533, 2025 WL 3171175 (S.D. Ind. Nov. 13, 2025); Caguana-Caguana v. Moniz, No. 25-cv13142, 2025 WL 3171043 (D. Mass. Nov. 13, 2025); Anselmo v. Moniz, No. 25-cv-13309, 2025 WL 3171137 (D. Mass. Nov. 13, 2025); Singh v. Noem, No. 25-cv-1251, 2025 WL 3170855 (W.D. Mich. Nov. 13, 2025); Hernandez v. Noem, No. 25-cv-1307, 2025 WL 3170872 (W.D. Mich. Nov. 13, 2025); Lara v. Noem, No. 25-cv-1332, 2025 WL 3170876 (W.D. Mich. Nov. 13, 2025); Gonzalez v. Noem, No. 25-cv-1315, 2025 WL 3170879 (W.D. Mich. Nov. 13, 2025); Rueda Torres v. Francis, No. 25 Civ. 8408, 2025 WL 3168759 (S.D.N.Y. Nov. 13, 2025); Cantu-Cortes v. O'Neill, No. 25-cv-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025); Ramandi v. Field Off. Dir., ICE ERO San Francisco, No. 25-CV-01462, 2025 WL 3182732 (E.D. Cal. Nov. 14, 2025); Barreno v. Baltasar, No. 25-cv-03017, 2025 WL 3190936 (D. Colo. Nov. 14, 2025); Villa v. Normand, No. 25-cv-89, 2025 WL 3188406 (S.D. Ga. Nov. 14, 2025); Rodriguez Loredo v. Forestal, No. 25 C 12758, 2025 WL 3187319 (N.D. Ill. Nov. 14, 2025); Quinonez v. Olson, No. 25 CV 13524, 2025 WL 3190598 (N.D. Ill. Nov. 14, 2025); Beltrand v. Mattos, No. 25-cv-01430, 2025 WL 3205283 (D. Nev. Nov. 14, 2025); Pu Sacvin v. Anda-Ybarra, No. 25-cv-01031, 2025 WL 3187432 (D.N.M. Nov. 14, 2025); Cuy Comes v. Deleon, No. 25 Civ. 9283, 2025 WL 3206491 (S.D.N.Y. Nov. 14, 2025); Chavez v. Dir. of Detroit Field Off., No. 25-cv-2061, 2025 WL 3187080 (N.D. Ohio Nov. 14, 2025); Kashranov v. Jamison, No. 25-cv-05555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); Cruz Gutierrez v. Thompson, No. 25-4695, 2025 WL 3187521 (S.D. Tex. Nov. 14, 2025); Cardona-Lozano v. Noem, No. 25CV-1784, 2025 WL 3218244 (W.D. Tex. Nov. 14, 2025); Morillo v. Albarran, No. 25-cv-01533, 2025 WL 3190899 (E.D. Cal. Nov. 15, 2025); Faizyan v. Casey, No. 25-cv-02884, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025); Aguilar v. Noem, No. 25 C 12731, 2025 WL 3204568 (N.D. Ill. Nov. 17, 2025); Soto-Garcia v. Olson, No. 25-cv-13736, 2025 WL 3204594 (N.D. Ill. Nov. 17, 2025); Ayala v. Olson, No. 25 C 13317, 2025 WL 3210398 (N.D. Ill. Nov. 17, 2025); Lara v. Olson, No. 25 C 13110, 2025 WL 3210403 (N.D. Ill. Nov. 17, 2025); Balderas v. Olson, No. 25 C 12749, 2025 WL 3210422 (N.D. Ill. Nov. 17, 2025); Garcia v. Olson, No. 25 C 13621, 2025 WL 3210425 (N.D. Ill. Nov. 17, 2025); Alvarez v. Olson, No. 25 C 13410, 2025 WL 3210461 (N.D. Ill. Nov. 17, 2025); Alarcon v. Moniz, No. 25-cv-13294, 2025 WL 3204553 (D. Mass. Nov. 17, 2025); Gonzalez v. Raycraft, No. 25-13502, 2025 WL 3218242 (E.D. Mich. Nov. 17, 2025); Orellana v. Noem, No. 25-cv-1333, 2025 WL 3198685 (W.D. Mich. Nov. 17, 2025); Cardona v. Unknown Party, No. 25-cv-1287, 2025 WL 3200682 (W.D. Mich. Nov. 17, 2025); Sevilla v. Noem, No. 25-cv-1325, 2025 WL 3200698 (W.D. Mich. Nov. 17, 2025); Guerra v. Noem, No. 25-cv-1341, 2025 WL 3204289 (W.D. Mich. Nov. 17, 2025); Escobar Salgado v. Mattos, No. 25-cv-01872, 2025 WL 3205356 (D. Nev. Nov. 17, 2025); Sandoval v. Rokosky, No. 25-17229, 2025 WL 3204746 (D.N.J. Nov. 17, 2025); Yupangui

41

v. Hale, No. 25-cv-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025); Castillo v. Wamsley, No. 25-cv-02172, 2025 WL 3204370 (W.D. Wash. Nov. 17, 2025); Diaz v. Albarran, No. 25-cv-09837, 2025 WL 3214972 (N.D. Cal. Nov. 18, 2025); Torres v. Bondi, No. 25-cv-02457, 2025 WL 3214773 (S.D. Cal. Nov. 18, 2025); Ruiz v. LaRose, No. 25-cv-02714, 2025 WL 3214975 (S.D. Cal. Nov. 18, 2025); Sanchez v. Noem, No. 25-CV-3068, 2025 WL 3214987 (S.D. Cal. Nov. 18, 2025); Perez v. Olson, No. 25 C 13731, 2025 WL 3213967 (N.D. Ill. Nov. 18, 2025); Lopez v. Olson, No. 25-cv-654, 2025 WL 3217036 (W.D. Ky. Nov. 18, 2025); Mendez v. Raycraft, No. 25-cv-1323, 2025 WL 3214100 (W.D. Mich. Nov. 18, 2025); Eshdavlatov v. Arnott, No. 25-cv-00844, 2025 WL 3217838 (W.D. Mo. Nov. 18, 2025); Rodriguez v. Arnott, No. 25-cv-00836, 2025 WL 3218553 (W.D. Mo. Nov. 18, 2025); Cornejo-Mejia v. Bernacke, No. 25-cv-02139, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Sarmiento Guerrero v. Noem, No. 25-CV-5881, 2025 WL 3214787 (E.D.N.Y. Nov. 18, 2025); Guzman Cardenas v. Almodovar, No. 25-CV-9169, 2025 WL 3215573 (S.D.N.Y. Nov. 18, 2025); Villegas ex. rel. Guzman Andujar v. Francis, No. 25-cv-09199, 2025 WL 3215597 (S.D.N.Y. Nov. 18, 2025); Demirel v. Fed. Det. Ctr. Philadelphia, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025); Cortina v. Anda-Ybarra, No. 25-CV-00523, 2025 WL 3218682 (W.D. Tex. Nov. 18, 2025); Singh v. Andrews, No. 25-cv-01543, 2025 WL 3248059 (E.D. Cal. Nov. 19, 2025); W.V.S.M. v. Wofford, No. 25-cv01489, 2025 WL 3236521 (E.D. Cal. Nov. 19, 2025); Elias v. Knight, No. 25-cv-00594, 2025 WL 3228262 (D. Idaho Nov. 19, 2025); Esparza v. Knight, No. 25-cv-00601, 2025 WL 3228282 (D. Idaho Nov. 19, 2025); Rodriguez v. Knight, No. 25-cv-00600, 2025 WL 3228285 (D. Idaho Nov. 19, 2025); Cordoba v. Knight, No. 25-cv-00605, 2025 WL 3228945 (D. Idaho Nov. 19, 2025); Ibarra v. Knight, No. 25-cv-00597, 2025 WL 3228968 (D. Idaho Nov. 19, 2025); Arredondo v. Hollinshead, No. 25-cv-00609, 2025 WL 3228972 (D. Idaho Nov. 19, 2025); Esparza v. Hollinshead, No. 25-cv-00599, 2025 WL 3228974 (D. Idaho Nov. 19, 2025); Gonzalez v. Knight, No. 25-cv-00602, 2025 WL 3228975 (D. Idaho Nov. 19, 2025); Hernandez v. Bondi, No. 25-cv-00615, 2025 WL 3228976 (D. Idaho Nov. 19, 2025); Martinez v. Knight, No. 25-cv-00610, 2025 WL 3228987 (D. Idaho Nov. 19, 2025); Casarez v. Thompson, No. 25-cv-00596, 2025 WL 3228988 (D. Idaho Nov. 19, 2025); Lopez v. Anderson, No. 25-cv-00621, 2025 WL 3228997 (D. Idaho Nov. 19, 2025); Camacho v. Hollinshead, No. 25-cv-00593, 2025 WL 3228998 (D. Idaho Nov. 19, 2025); Rangel v. Knight, No. 25-cv-00607, 2025 WL 3229000 (D. Idaho Nov. 19, 2025); Serrato v. Anderson, No. 25-cv-00603, 2025 WL 3229001 (D. Idaho Nov. 19, 2025); Elias v. Knight, No. 25-cv-00604, 2025 WL 3229013 (D. Idaho Nov. 19, 2025); Ramirez v. Noem, No. 25 C 13651, 2025 WL 3227341 (N.D. Ill. Nov. 19, 2025); Lobera v. Noem, No. 25 CV 13593, 2025 WL 3228984 (N.D. Ill. Nov. 19, 2025); Gonzalez v. Olson, No. 25 C 13439, 2025 WL 3237190 (N.D. Ill. Nov. 19, 2025); Del Villar v. Noem, No. 25-CV-00137, 2025 WL 3231630 (W.D. Ky. Nov. 19, 2025); Ibarra v. Noem, No. 25-cv-1335, 2025 WL 3223765 (W.D. Mich. Nov. 19, 2025); Ortiz v. Raycraft, No. 25-cv-1328, 2025 WL 3223771 (W.D. Mich. Nov. 19, 2025); Martinez v. Unknown Party, No. 25-cv-1298, 2025 WL 3223774 (W.D. Mich. Nov. 19, 2025); Pastor v. Raycraft, No. 25-cv-1301, 2025 WL 3223777 (W.D. Mich. Nov. 19, 2025); Hernandez Franco v. Raycraft, No. 25-cv-1274, 2025 WL 3223780 (W.D. Mich. Nov. 19, 2025); Orozco-Martinez v. Lynch, No. 25-cv-1353, 2025 WL 3223786 (W.D. Mich. Nov. 19, 2025); Francisco T. V. Bondi, No. 25-CV03219, 2025 WL 3236513 (D. Minn. Nov. 19, 2025); Mairena-Munguia v. Arnott, No. 25-cv-3318, 2025 WL 3229132 (W.D. Mo. Nov. 19, 2025); Ortiz v. Bernacke, No. 25-cv-01833, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Sales v. Mattos, No. 25-cv-01819, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Duran v. Bernacke, No. 25-cv-02105, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Perez v. Lyons, No. 25-cv-17186, 2025 WL 3238540 (D.N.J. Nov. 19, 2025); Ndiaye v. Jamison, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025); Figueroa v. Hermosillo, No. 25-cv-02228, 2025 WL 3230466 (W.D. Wash. Nov. 19, 2025); Manzanarez v. Bondi, No. 25-cv-

42

01536, 2025 WL 3247258 (E.D. Cal. Nov. 20, 2025); Flores v. Noem, No. 25-cv-03011, 2025 WL 3240807 (S.D. Cal. Nov. 20, 2025); Boffill v. Field Off. Dir., No. 25-cv-25179, 2025 WL 3246868 (S.D. Fla. Nov. 20, 2025); Rusu v. Noem, No. 25 C 13819, 2025 WL 3240911 (N.D. Ill. Nov. 20, 2025); Salinas v. Woosley, No. 25-cv-121, 2025 WL 3243837 (W.D. Ky. Nov. 20, 2025); Curillo v. Noem, No. 25-cv-1340, 2025 WL 3235737 (W.D. Mich. Nov. 20, 2025); Beltran v. Raycraft, No. 25-cv1352, 2025 WL 3237429 (W.D. Mich. Nov. 20, 2025); Sanchez v. Noem, No. 25-cv-1361, 2025 WL 3237435 (W.D. Mich. Nov. 20, 2025); Melgar v. Noem, No. 25-cv-1377, 2025 WL 3240058 (W.D. Mich. Nov. 20, 2025); Cabrera-Cortes v. Knight, No. 25-cv-01976, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Sandhu v. Tsoukaris, No. 25-14607, 2025 WL 3240810 (D.N.J. Nov. 20, 2025); Lucero v. Soto, No. 2516737, 2025 WL 3240895 (D.N.J. Nov. 20, 2025); Sun v. Almodovar, No. 25-cv-9262, 2025 WL 3241268 (S.D.N.Y. Nov. 20, 2025); Escarcega v. Olson, No. CIV-25-1129, 2025 WL 3243438 (W.D. Okla. Nov. 20, 2025); Patel v. McShane, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); Plascencia v. Bondi, No. CV-25-04140, 2025 WL 3250914 (D. Ariz. Nov. 21, 2025); Padilla v. Bowen, No. 25-cv-10780, 2025 WL 3251368 (C.D. Cal. Nov. 21, 2025); Singh v. Bowen, No. 25-cv-03034, 2025 WL 3251437 (C.D. Cal. Nov. 21, 2025); Juarez v. Noem, No. 25-cv-02972, 2025 WL 3251658 (C.D. Cal. Nov. 21, 2025); Velasquez v. LaRose, No. 25-CV-3137, 2025 WL 3251373 (S.D. Cal. Nov. 21, 2025); Diaz-Villatoro v. LaRose, No. 25-CV-3087, 2025 WL 3251377 (S.D. Cal. Nov. 21, 2025); Santos v. LaRose, No. 25-cv-3009, 2025 WL 3251575 (S.D. Cal. Nov. 21, 2025); Marroquin v. LaRose, No. 25-cv-3013, 2025 WL 3251579 (S.D. Cal. Nov. 21, 2025); Lucas-Miguel v. LaRose, No. 25-cv-3022, 2025 WL 3251580 (S.D. Cal. Nov. 21, 2025); Garcia v. Raycraft, No. 25-cv-13407, 2025 WL 3252286 (E.D. Mich. Nov. 21, 2025); Delcid v. Noem, No. 25-cv-1366, 2025 WL 3251139 (W.D. Mich. Nov. 21, 2025); Oropeza v. Noem, No. 25-cv-1343, 2025 WL 3251140 (W.D. Mich. Nov. 21, 2025); Delgado v. Noem, No. 25-cv-1249, 2025 WL 3251144 (W.D. Mich. Nov. 21, 2025); Velasquez-Gomez v. Soto, No. 25-17327, 2025 WL 3251443 (D.N.J. Nov. 21, 2025); Valerio v. Joyce, No. 25-17225, 2025 WL 3251445 (D.N.J. Nov. 21, 2025); Gomez v. Bondi, No. C25-2248, 2025 WL 3251157 (W.D. Wash. Nov. 21, 2025); Ramos v. Hermosillo, No. 25-cv-02273, 2025 WL 3251159 (W.D. Wash. Nov. 21, 2025); Padilla v. Galovich, No. 25-cv-863, 2025 WL 3251446 (W.D. Wis. Nov. 21, 2025).

Appendix B

Pipa-Aquise v. Bondi, No. 25-cv-01094, 2025 WL 2490657 (E.D. Va. Aug. 5, 2025); Chavez v. Noem, No. 25-cv-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); Vargas Lopez v. Trump, No. 25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); Cirrus Rojas v. Olson, No. 25-cv-1437, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025); Sandoval v. Acuna, No. 25-cv-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); Oliveira v. Patterson, No. 25-cv-01463, 2025 WL 3095972 (W.D. La. Nov. 4, 2025); Mejia Olalde v. Noem, No. 25-cv-00168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); Altamirano Ramos v. Lyons, No. 25-cv09785, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025); Cabanas v. Bondi, No. 25-cv-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025); Valencia v. Chestnut, No. 25-cv-01550, 2025 WL 3205133 (E.D. Cal. Nov. 17, 2025); Alonzo v. Noem, No. 25-cv-01519, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025); De Andrade v. Patterson, No. 25-cv-01695, 2025 WL 3252707 (W.D. La. Nov. 21, 2025).

43