FILED
CLERK

4/8/2026 1:44 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
FELIPE FERNANDO FLORES,

                      Petitioner,

        - against -

MARKWAYNE MULLIN, Secretary, U.S. Dept. of
Homeland Security, *et al.*,

                    Respondents.
-------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

Civil Action
No. 26-1855 (GRB)

**GARY R. BROWN, United States District Judge**:

On March 29, 2026, petitioner commenced this proceeding by filing a "Petition For Writ Of Habeas Corpus (28 U.S.C. § 2241) And Emergency Order To Show Cause With Temporary Restraining Order" (the "Petition"). Docket Entry ("DE") 1. According to the Petition, the "central question presented is straightforward: under what lawful statutory authority is Petitioner currently detained, and was that authority validly invoked?" *Id.* at 1. The Petition describes, in some detail, "The Illegal Arrest": petitioner, who has never been arrested by the police, was on his way to work as a tree cutter in a car with four other workers when the car was stopped by masked U.S. Immigration and Customs Enforcement ("ICE") officers. *Id.* at 3. According to the Petition:

> **All of the occupants of the vehicle were Hispanic, and they were racially profiled. Before they were accosted by the ICE agents, the driver had not committed any traffic or any other kind of infraction or crime and had not given the ICE agents any probable cause to stop him, or to accost or**

1

**detain them, and did not give them any articulable suspicion to detain them and ask them questions. The ICE agents did not know anything about the occupants before detaining them.**

*Id.* at 4 (emphasis in the original). The ICE officers surrounded the car, arrested and handcuffed petitioner and "illegally interrogated him about his pedigree, national origin and immigration status." *Id.* Taken together, these facts lead petitioner to raise a troubling question: "Can DHS racially profile and stop an Ecuadorian man on the street because of his appearance, question him about national origin, seize him, search him and arrest him without probable cause or a valid arrest warrant?" *Id.* at 29.

Petitioner had received no arrest warrant, summons or Notice to Appear either prior to or at the time of his apprehension. *Id.* at 4-5. At the time of his arrest, petitioner was not provided with any documentation justifying that arrest and custody. By the time the Petition was filed on March 29 (petitioner had already been held in custody for 25 days) "neither Petitioner nor counsel ha[d] been provided any contemporaneous custodial documentation, including any executed administrative warrant, charging document, reinstatement notice, revocation notice, custody determination or record establishing whether Respondents purport to proceed under 8 U.S.C. § 1225, § 1226 or § 1231." *Id.* at 8. Somewhat presciently, in the Petition, petitioner states that "if Respondents later assert a prior expedited-removal order as the basis for detention or reinstatement, Respondents must prove the existence of an actual, operative order, not merely an inadmissibility notice or other incomplete form." *Id.* at 14.

Following expedited briefing, on March 31, 2026, the Court held an emergency bail/show cause hearing in this matter.[1] At that hearing, both sides proceeded via attorney proffer. *See generally* Transcript of Proceedings dated March 31, 2026 ("Tr.").

According to respondents' proffer, which was supported by three documents, petitioner had been the subject of a removal order in February 2007 and was removed at that time. Tr. 5. That removal order has not been provided to the Court or petitioner. Instead, respondents produced what appears to be a contemporaneous notice of the entry of such an order. Petitioner returned, according to the respondents, at some unknown time. *Id.* at 5-6. On March 4, 2026, petitioner was stopped by ICE officers. According to the representations made, petitioner was not the target of the operation being carried out by ICE officers that day, but "matched the description of the targeted individual." *Id.* at 8; *see Sanchez Alfaro*, 2026 WL 734348, at *2 ("This rationale has become so commonplace in cases involving ICE enforcement efforts that such testimony must be examined carefully."). He has been confined at the Metropolitan Detention Center (MDC) since that time.

On the day of the apprehension, according to documentation produced, ICE issued an administrative "Warrant For Removal/Deportation" and a "Notice of Intent/Decision to Reinstate Prior Order." Tr. 4. Yet problems remain. For example, the Notice of Intent contains a section in which petitioner – who does not speak English

---

[1] At the hearing, the Court permitted both sides time to submit additional briefing and factual materials. Petitioner opted to submit additional briefing and factual material, while respondents did not.

– is to indicate whether he "wish(es) to make a statement contesting this determination." The document submitted is incomplete, there is no indication that it was translated or even received by petitioner and the words "Refused to Sign" appear to have been added with a rubber stamp. Furthermore, the completion of an administrative warrant "at the time of the arrest," Tr. 7, has raised constitutional problems in many cases, *see, e.g., Sanchez Alfaro v. Mullin*, No. 26-0766 (GRB), 2026 WL 734348, at *5 (E.D.N.Y. Mar. 16, 2026). The factual circumstances here may be somewhat different: given allegations that petitioner was removed and clandestinely returned to the country, and ICE would have been unaware of his presence, the post-encounter issuance of the warrant may be justified provided other factors, such as the "likely to escape" assessment required by 8 U.S.C.A. § 1357 has been undertaken. *Id.,* 2026 WL 734348, at *5. No such showing has been made and the Government has not submitted any factual declarations in support of its position.

In terms of detention, the Government invokes the mandatory detention provision contained in 8 U.S.C. §1231(a)(5), which provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

In its response, the Government relies heavily on the argument that the provisions of 8 U.S.C. § 1252(a)(5) and (b)(9) strip this Court of jurisdiction over the Petition. However,

4

this argument requires the Court to construe the Petition as an application to stay petitioner's removal or otherwise challenge an existing removal order – assuming that respondents establish that one exists.  Petitioner eschews this construction of his Petition.

Respondents' brief, devoted almost exclusively to the preclusive effects of these sections, ignores recent, binding precedent.  The Second Circuit has held:

> These arguments are unlikely to succeed in no small part because our analysis is guided by longstanding principles of statutory interpretation requiring Congress to speak clearly and specifically when it wishes to deprive the federal courts of jurisdiction.  Repeatedly, including in the INA context, the Supreme Court has declared that we should "take account ... of the presumption favoring interpretations of statutes [to] allow judicial review ... absent clear statement."  *Kucana v. Holder*, 558 U.S. 233, 237, 130 S. Ct. 827, 175 L.Ed.2d 694 (2010) (quotation marks and citation omitted); *see also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 483– 84, 111 S. Ct. 888, 112 L.Ed.2d 1005 (1991) ("We hold that given the absence of clear congressional language mandating preclusion of federal jurisdiction and the nature of respondents' requested relief, the District Court had jurisdiction ...."); *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 671, 106 S. Ct. 2133, 90 L.Ed.2d 623 (1986) ("[O]nly upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." (quotation marks omitted)).  *Because Öztürk challenges her arrest and detention, and not her removal, we find that the government is unlikely to make such a showing.*

*Öztürk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025) (emphasis added).  Here, petitioner disclaims any challenge to removal and expressly limits his challenge to the legality of

his arrest and detention.  *See, e.g.* DE 1 at 15.  Similarly, respondents assert that jurisdiction is barred by 8 U.S.C. §1252(g), but as in *Öztürk:*

> The government dramatically overstates the reach of § 1252(g).  As both the Supreme Court and our Court have explained, § 1252(g)'s bar on jurisdiction is "narrow[ ]."  *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC"),* 525 U.S. 471, 482, 119 S. Ct. 936, 142 L.Ed.2d 940 (1999); *see also Fulton v. Noem,* No. 25-194, at 2 (2d Cir. Apr. 30, 2025) (order granting stay of removal pending appeal and rejecting the proposition that § 1252(g) bars review of challenges to the manner of removal).  Section 1252(g) is directed "against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."  *AADC*, 525 U.S. at 485 n.9, 119 S. Ct. 936.  This bar on judicial review is thus cabined "to three discrete actions": a decision "to 'commence proceedings, adjudicate cases, or execute removal orders.'"  *Id.* at 482, 119 S. Ct. 936 (quoting 8 U.S.C. § 1252(g)) (emphases adopted).  There are "many other decisions or actions that may be part of the deportation process" but that do not fall within the three discrete exercises of "prosecutorial discretion" covered by § 1252(g). *Id.* at 482, 489, 119 S. Ct. 936.

136 F.4th at 396–97.

What falls squarely within this Court's jurisdiction – and the ambit of the Great Writ – are petitioner's claims regarding the legality of his arrest and the conditions of confinement.  As to the arrest, petitioner asserts that ICE officers had no basis to intercept, interrogate and arrest him, alleging therefore that he was the victim of unconstitutional racial profiling.  Respondents offer nothing in response, other than a concession by its counsel during the hearing that petitioner was not a target of ICE's

operation.  Tr. 8.  This is not the first time before this Court that ICE has been accused of invidious, unconstitutional arrest and detention practices and offered no response:

> [T]here is undisputed evidence of record that the arrest was motivated by discriminatory animus.  [ ] These are serious allegations supported by material evidence.  Recognizing the gravity of such claims, the Court, *sua sponte*, afforded respondents the chance "to contest any of the matters asserted or provide any further factual submissions."  Electronic Order dated February 18, 2026; *cf. Batson v. Kentucky*, 476 U.S. 79, 93, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986) (noting "the 'invidious quality' of governmental action claimed to be racially discriminatory.").  Confronted with these alarming allegations, and provided an opportunity to respond, Government counsel offered no evidence.  Instead, counsel filed another polemical brief that ignores these allegations of racial discrimination.  DE 14.

*Garcia Lanza v. Noem*, No. 26-0029 (GRB), 2026 WL 585130, at *8 (E.D.N.Y. Mar. 3, 2026).  Once again, faced with allegations of racial animus in its arrest proceedings, respondents offer nothing in response.  That is, to say the least, disconcerting.

As to the conditions of confinement, as a general matter, petitioner's confinement at MDC immediately raises concerns.[2]  *Sanchez Alfaro*), 2026 WL 734348, at *4 (collecting cases) ("ICE detained Petitioner at the Metropolitan Detention Center in Brooklyn, a facility so notoriously plagued with issues arising from overcrowding and underfunding that judges in this Circuit have reduced or modified sentences for

---

[2] This arrangement stands in stark contrast to the situation faced by Judge DeArcy Hall in *Sauceda Henriquez v. Noem*, where the petitioners were being housed at hotels rented by ICE.  No. 25-CV-07023 (LDH), 2026 WL 111665 at *2 (E.D.N.Y. Jan. 15, 2026).

convicted criminals based on the conditions of confinement there.").  Indeed, if judges in this district and the Southern District of New York have regularly reduced sentences for dangerous, violent criminals based upon the conditions at MDC, it would seem obvious that such a facility would not be appropriate for civil detainees like petitioner.

Lest there be any doubt about whether conditions at MDC might have changed or that ICE made special arrangements to safeguard these detainees, petitioner has provided a sworn declaration cataloguing some of the hardships he has endured during more than a month in which he has been, and continues to be, detained there.[3] According to petitioner, and respondents have made no effort to controvert his sworn assertions, ICE detainees at MDC are frequently denied access to water, comestible food and sleep (guards wake them every two hours by shining flashlights into their faces). His access to phone calls and contact with his counsel has been severely restricted, limiting petitioner's ability to timely and reasonably assist in the litigation of this action. The temperature in the facility remains problematic, ranging from freezing cold to unbearably hot.  These complaints have long been reported about the facility.  *Vera v. Noem*, No. 26-CV-1454, 2026 WL 712889, at *1 (E.D.N.Y. Mar. 14, 2026) ("Petitioner has allegedly experienced unsanitary and solitary confinement-like conditions, sleep deprivation, medical neglect, and being forced to endure cold winter temperatures

---

[3] The Court initially assumed that petitioner was being housed at MDC because of the pending proceeding and this Court's order directing that petitioner be maintained in or near the district.  This assumption proves incorrect; the evidence shows that petitioner was first housed at MDC on March 4, 2026; his Petition was filed 25 days later, at which point the Court entered the aforementioned order.  DE 11 ¶3; DE 1.

indoors without cold weather apparel or blankets"); *United States v. Colucci*, 743 F. Supp. 3d 452, 456 (E.D.N.Y. 2024) (referencing "(1) continued reports of inordinate periods of lockdown, (2) claims that the facility provides inadequate and/or substantially delayed necessary medical care—a particular risk in this case and (3) general issues about the conditions at the facility"); *Scott v. Quay*, 338 F.R.D. 178, 184 (E.D.N.Y. 2021) (discussing "long-standing unaddressed temperature regulation issues"). Most concerningly, petitioner has described several specific and serious medical conditions from which he has been suffering, and he has received no medical care. *See generally* DE 11.

The question before the Court at this juncture is the possibility of bail pending the resolution of the habeas petition. As such, the Court must decide "whether the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Clarke v. U.S. Dep't of Homeland Sec.*, No. 25-CV-6773 (GRB), 2025 WL 3674471, at *5 (E.D.N.Y. Dec. 18, 2025) (quoting *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001) ("[F]ederal courts have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in criminal habeas cases.")). Given the substantial questions regarding the bases of arrest and detention of petitioner, in addition to the substantial issues relating to the conditions of detention – which in this case arise to extraordinary circumstances - the Court finds that consideration of release on bail is appropriate.

Finally, at the hearing, petitioner proffered evidence, as well as a suretor who was questioned under oath, tending to demonstrate that he presents neither a flight risk

nor a danger to the community, and the Government presented little to counter this demonstration.  Out of an abundance of caution, the Court orders that the petitioner and the proposed suretor execute a $5,000 appearance bond.

As such it is hereby Ordered that:

1. Petitioner shall be released forthwith pursuant to the Conditions of Release Upon Recognizance set forth in this Court's standing order;

2. ICE shall return all property seized from the petitioner at the time of his arrest;

3.  Counsel for petitioner will, within 48 hours of petitioner's release, file a copy of the Conditions of Release Upon Recognizance (in the form annexed to this Court's Standing Order, previously filed on the docket) executed by petitioner and the suretor, including a certification that it was translated for both signatories.

4. Consistent with the Standing Order, respondents will have 30 days to file any additional legal and factual substantive opposition to the Petition, which should include the factual bases for petitioner's arrest. Counsel for petitioner will have 30 days thereafter to file its reply.  Any party may request a factual hearing pursuant to 28 U.S.C. § 2243, and declination to do so will be deemed consent to review of the matter upon submission.

**SO ORDERED.**

Dated: Central Islip, New York
     April 8, 2026

*/s/ Gary R. Brown*
GARY R. BROWN
United States District Judge
